**Sharon SCHWARDT, et al., Petitioners, Appellants,**

v.

**COUNTY OF WATONWAN, Brent Kueker, and Douglas Anderson, Respondents.**

No. C8–01–1136.

Supreme Court of Minnesota.

Feb. 13, 2003.

Thomas G. Dunnwald, Dunnwald & Peterson, PA, Minneapolis, MN, for Appellants.

Arvid Wendland, Wendland Timmerman, Blue Earth, MN, (for County of Watonwan), for Respondent.

## OPINION

MEYER, Justice.

Appellants Sharon and Bernhardt Schwardt challenge the court of appeals' decision upholding the Watonwan County Board's grant of a conditional use permit (CUP) for a confined hog-feeding operation. The Schwardts contend that the board's grant of the CUP was unreasonable and arbitrary because the board failed to properly consider the potential adverse health effects of the proposed feedlot, overlooked a setback requirement in the governing ordinance, and failed to support the grant of the CUP with sufficient findings. We affirm the court of appeals' decision to affirm the grant of the CUP, but reverse the court of appeals' remand for further proceedings.

In March 2001, Brent Kueker applied to Watonwan County for a permit to build three hog confinement facilities on a parcel of land owned by his father-in-law, Douglas Anderson. Those three buildings would together house a maximum of 3,120 hogs, or 936 animal units. A local ordinance required Kueker to obtain a CUP because the proposed feedlot would contain more than 700 animal units. Watonwan County, Minn., Zoning Ordinance § 6, subd. C–12 (July 1999) (hereinafter Ordinance). The proposed CUP was heard first by the county's seven-member planning and zoning commission. Neighbors of the proposed feedlot site were given the opportunity to submit written and oral testimony in support of, or in opposition to, the proposed CUP.

The Schwardts live on a farm located one-half mile southeast from the proposed site and opposed the grant of a permit for the feedlot. They raised concerns about their health, odors, water pollution, their property's value, dust from increased traffic, the potential for introducing disease to their cattle, and that the facilities did not meet the half-mile setback requirement. Sharon Schwardt presented letters from various doctors opining that Sharon and her two adult children suffered from health conditions related to hog exposure. Nyles Schwardt and Nyla Johnson, the Schwardts' two adult children, testified about their own allergies to hogs. In addition to the letters from doctors, the Schwardts produced notes from six other neighbors raising concerns about air and water pollution and traffic on the roads, and county property records for a number of parcels showing a fifteen percent reduction in value because of hog odor. The Schwardts submitted a letter from a Watonwan Soil and Water employee concluding that "odors will increase at the Schwardt and Anderson building sites." The Schwardts submitted newspaper articles and reports discussing how hog farms can negatively affect the health of people in the surrounding area.

Three major factors countered the Schwardts' evidence. First, Kueker and his wife argued that the Schwardts did not establish a direct causal relationship between the site of the proposed facilities and the Schwardts' health concerns. The Kuekers noted that there is already a hog barn close to the Schwardts, and that the Schwardts failed to provide specific evidence that the proposed feedlot would cause increased health problems. Second, an employee from the county environmental services office offered his conclusion that the environmental concerns were not serious. Third, the planning commission

placed conditions on the permit in order to assuage some of the neighbors' fears.

The planning commission discussed all the issues raised by the Schwardts. In the discussion about whether the proposal met the half-mile setback requirement, the Kuekers assured the commission that they would make any necessary adjustments to the location and the environmental services director of Watonwan County indicated that no building would be constructed unless it met the setback requirement. The planning commission added four conditions to address the neighbors' other concerns. The conditions were that trees had to be planted in strategic locations, certain additives had to be mixed into the manure pits, the roads had to be treated for dust, and neighbors had to be notified twenty-four hours before any manure could be applied to the fields. Even with those conditions, the planning commission voted 4–3 to recommend that the board deny the permit. All four members voting against the permit explained that health concerns were influential in their decision.

■ The Watonwan County Board of Commissioners (the board) then took up the issue and considered the Kueker permit at four meetings over a two-month period. The board studied the same evidence the Schwardts submitted to the planning and zoning commission, as well as an additional letter from Sharon Schwardt's doctor recommending "consideration of the patient's health in deciding placement of any hog facility in the area." The board also had before it a new letter from the environmental services director for Watonwan County opining that the Schwardts' concerns about noise and pollu-

tion of ground and surface water were unfounded. The board visited the proposed site, heard oral testimony from all interested parties, and deliberated at length in their meetings, which were recorded. At the fourth meeting involving the Kueker CUP, the board members voted 4–1 to approve the CUP with the previously noted four conditions. The board's written findings consist of a checklist that was marked to indicate that all standards in the ordinance were met.[1]

The Schwardts appealed to the Minnesota Court of Appeals. Upon review of the record, the court of appeals concluded that Watonwan County did not act arbitrarily in granting the Kueker CUP. It held the board acted reasonably in addressing the Schwardts' environmental and health concerns, and it remanded to the board with instructions for Kueker to verify he has met the setback requirement. The court also considered the Schwardts' argument that the board did not make adequate findings of fact, and held that the findings were adequate.

■ Our standard of review is a deferential one, as counties have wide latitude in making decisions about special use permits. *See Zylka v. City of Crystal,* 283 Minn. 192, 195–96, 167 N.W.2d 45, 49 (1969). We review a county's decision to approve a CUP independently to see whether there was a reasonable basis for the decision, or whether the county acted unreasonably, arbitrarily, or capriciously. *See Swanson v. City of Bloomington,* 421 N.W.2d 307, 311 (Minn.1988); *Northwestern Coll. v. City of Arden Hills,* 281 N.W.2d 865, 868 (Minn.1979).

---

**1.** The fact that the board acted against the recommendation of the planning commission does not make its decision arbitrary. *Bd. of Supervisors of Benton Township v. Carver County Bd. of Comm'rs,* 302 Minn. 493, 500– 01, 225 N.W.2d 815, 819–20 (1975) (ruling that the board's failure to acknowledge due consideration of the planning commission recommendation did not constitute grounds for reversal).

By statute, counties may approve conditional uses if the applicant satisfies the standards set out in the county ordinance. *See* Minn.Stat. § 394.301, subd. 1 (2002). To show that the board acted unreasonably, the Schwardts must establish that the proposal did not meet one of the standards set out in the Ordinance and that the grant of the CUP was an abuse of discretion.[2] *See Corwine v. Crow Wing County,* 309 Minn. 345, 352, 244 N.W.2d 482, 486 (1976) (ruling that individuals challenging CUPs have the burden "to establish the alleged failures [of the proposal to meet county standards] and show an abuse of discretion"). The Schwardts first contend that the board acted unreasonably in granting the CUP to Brent Kueker in light of the evidence from the Schwardts that their health would be affected. Health concerns are not explicitly addressed in the Watonwan County standards for issuing CUPs, but can be read into the broad language of the first and fifth requirements ensuring that the proposed use will not interfere with neighbors' enjoyment of their property or create a nuisance.

The Schwardts' evidence that the health of their family would suffer as a result of the Kuekers' feedlot consisted of letters from three doctors and general reports about the health effects of continued exposure to hydrogen sulfide and odors from swine. The doctors' letters do not address the question of whether a new feedlot, of the size of the Kueker proposal, approximately a half mile from the Schwardt farm, would aggravate the Schwardts' symptoms. For example, Sharon Schwardt's doctors say she has a rash "which she developed to hog dander following [years] of exposure," and "[a] safe distance between the pig barn and her house should be considered." Nyles Schwardt's doctor wrote that his "asthma worsens when [he is] exposed to barns, hogs, pheasants, chickens, cats and dogs." Nyla Johnson submitted clinical records

---

**2.** The Watonwan County Zoning Ordinance sets out eleven standards regarding CUPs. It reads:

No Conditional Use shall be recommended by the County Planning Commission unless said Commission shall find:

1. that the Conditional Use will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted.
2. that the establishment of the Conditional Use will not impede the normal and orderly development and improvement of surrounding vacant property for predominant uses in the area.
3. that adequate utilities, access roads, drainage and other necessary facilities have been or are being provided.
4. that adequate measures have been or will be taken to provide sufficient off-street parking and loading space to serve the proposed use.
5. that adequate measures have been or will be taken to prevent or control offensive odor, fumes, dust, noise and vibration, so that none of these will constitute a nuisance, and to control lighted signs and other lights in such a manner that no disturbance to neighboring properties will result.
6. that soil[] conditions are adequate to accommodate the proposed use.
7. that proper facilities are provided which would eliminate any traffic congestion or traffic hazard which may result from the proposed use.
8. that the density of proposed residential development is not greater than the density of the surrounding neighborhood or not greater than the density indicated by the applicable Zoning District.
9. that the intensity of proposed commercial or industrial development is not greater than the intensity of the surrounding uses or not greater than the intensity characteristic of the applicable Zoning District.
10. relationship of proposed use to the County Land Use Plan.
11. the demonstrated need for the proposed use.

Ordinance at § 13(d).

indicating she has a rash that started after she began working in a hog barn. This evidence did not persuade the board to deny the permit.

This court has recognized that in quasi-judicial hearings the quality of evidence and testimony does not have to meet full judicial standards. *See Kletschka v. Le Sueur County Bd. of Comm'rs,* 277 N.W.2d 404, 405 (Minn.1979); *Barton Contracting Co. v. City of Afton,* 268 N.W.2d 712, 716 (Minn.1978). However, merely because county boards can accept evidence under a different standard than courts does not mean they have to accord great weight to that evidence. The county board may discount evidence that lacks relevance or credibility.

■ Unlike *Earthburners,* where we remanded a CUP denial to the county in part because it had limited the testimony it would consider and did not consider all pertinent questions, here the board accepted all proffered testimony. *See Earthburners, Inc. v. County of Carlton,* 513 N.W.2d 460, 461 (Minn.1994). The record is clear that a majority of the board members were not convinced that the Schwardts would suffer adverse health effects from Kueker's proposed feedlot.[3] And in our independent review of the record, we do not conclude that the county's decision was unreasonable. None of the evidence so conclusively established that a new feedlot on neighboring property would further aggravate the Schwardts' health conditions that the approval amounted to an abuse of discretion.

The Schwardts' second argument is that the board acted arbitrarily in granting the CUP even after the Schwardts alleged the proposal did not meet the half-mile setback required by the Ordinance. The Schwardts are correct that a feedlot must be set at least one-half mile back from a neighboring residence. Ordinance at § 6, subd. K–3. They are incorrect that it is the board's responsibility to ensure compliance with that requirement.

■ The setback requirement is not one of the standards that a CUP must meet to garner the board's approval. Instead, it is a requirement that the county's zoning administrator enforces. Ordinance § 6, subd. I–6 ("feedlots that are required to meet setbacks will need to submit, when requested by the Zoning Administrator, proof showing the distance will be met"). A feedlot permit, which is required in addition to the CUP, is not issued until the zoning administrator is satisfied that all provisions in the county ordinance are met. *Id.* at § 20, subds. A, B. While commissioners of both the planning and county boards inquired about the setback, they were satisfied when the Kuekers promised both the commission and the board that they would comply with the required distance. The county's environmental services director further reassured the board that the setback would be met before the Kuekers could build their feedlot. The board treated the setback issue accordingly—as one it did not have to resolve—and properly reserved the question for the zoning department. As it was not the board's duty to ensure the setback was met, the board did not act arbitrarily in approving the Kueker CUP without attaching a setback requirement to the CUP. The court

---

**3.** The final vote is sufficient evidence that the board was not convinced by the Schwardts' evidence. But they also expressed that in their debates. For example, Commissioner Krenz worried that "everybody can say that they [have] health issues. You go to the doctor often enough and he is going to give you a letter that says that probably is your problem." On June 5, 2001, Commissioner Sorenson explained that he did not think another hog farm would cause more health problems.

of appeals' remand to the board is reversed.

 Finally, the Schwardts portray the board's grant of a CUP as arbitrary because it did not make explicit findings about why the proposal was approved. We have specified that an order granting a CUP shall demonstrate the board's conclusion that the proposal has satisfied each of the zoning ordinance's conditions for approval. *See Earthburners,* 513 N.W.2d at 463 (finding a CUP denial was premature, not arbitrary, because the board had not given sufficient consideration to the issues raised by opponents). In this case, the board did indicate on a checklist that the Kueker CUP, with conditions, met the standards in the Ordinance. The board's use of a checklist is a sufficient expression of the board's conclusion that the conditions for approval have been met.[4] As we reasoned in *Corwine,* the county "should not have to find negatively that alleged failures to meet requirements are without merit." *Corwine,* 244 N.W.2d at 486. Although there may be instances where the evidence submitted in opposition to a CUP is so compelling that it would suggest an abuse of discretion if the board approved the permit absent an explanation, this is not one of those cases. The board's use of a checklist and the grant of the CUP was not arbitrary because the board received and considered all proffered evidence, gave both sides an opportunity to be heard, and the evidence is not so significant and one-sided as to render the approval arbitrary.

In summary, the record portrays the board as giving serious consideration to the Schwardts' allegations that the Kuekers' proposed feedlot would have detrimental effects on their lives and deciding after deliberation to approve the CUP. The Schwardts have not established that the Kueker proposal (with conditions) failed to meet the standards in the Ordinance. Because of the deference given to local government bodies, and the presence of evidence supporting the decision of the board, we uphold the county's determination.

We hold that the Watonwan County Board did not abuse its discretion in the grant of the CUP to Kueker and affirm the court of appeals on that issue. We further hold that the Watonwan County Board properly reserved the setback question for the zoning department, and we reverse the court of appeals' remand to the board on the setback issue.

Affirmed in part, reversed in part.

---

4. We have traditionally held CUP approvals to a more deferential standard of review than CUP denials. *See, e.g., Interstate Power Co. v. Nobles County Bd. of Comm'rs,* 617 N.W.2d 566, 579 (Minn.2000); *Corwine,* 244 N.W.2d at 486. Neither party argued that this distinction is unwarranted.