*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1734**

Tammy Loncorich, et al.,
Relators,

vs.

Kevin Buss, et al.,
Respondents,

McLeod County
Board of Commissioners, et al.,
Respondents.

**Filed August 17, 2015
Affirmed; motions denied
Chutich, Judge
Hudson, Judge (concurring specially)**

McLeod County Board of Commissioners
File No. CUP #JCP14-C1

James P. Peters, Law Offices of James P. Peters, PLLC, Glenwood, Minnesota (for relators)

Jack Y. Perry, Maren F. Grier, Briggs & Morgan, P.A., Minneapolis, Minnesota (for respondents Kevin Buss, et al.)

Michael K. Junge, McLeod County Attorney, Daniel R. Provencher, Assistant County Attorney, Glencoe, Minnesota (for respondent McLeod County Board of Commissioners)

Considered and decided by Worke, Presiding Judge; Hudson, Judge; and Chutich, Judge.

UNPUBLISHED OPINION

**CHUTICH**, Judge

Relators Tammy Loncorich and several of her neighbors challenge a conditional use permit granted to respondents Kevin and Kelsey Buss by respondent McLeod County Board of Commissioners. Because granting the conditional use permit was not arbitrary, unreasonable, or capricious, we affirm.

## FACTS

This dispute involves a small feedlot of approximately 27 acres that the Busses are attempting to establish near Hutchinson and the applicability of three sets of land-use ordinances: the McLeod County Zoning Ordinance, the McLeod County Feedlot Ordinance, and the Hutchinson Joint Planning Area Zoning Ordinance.

The McLeod County Zoning Ordinance (the County Ordinance) applies to all areas in McLeod County that are outside city limits. Under state law, however, Hutchinson and McLeod County enacted a joint planning area agreement that gave the McLeod County Board of Commissioners the authority to regulate use of land in an area of up to two miles beyond Hutchinson city limits. *See* Minn. Stat. §§ 462.357, 471.59 (2014). This area is known as the "Hutchinson Joint Planning Area," and the Hutchinson Joint Planning Area Zoning Ordinance (the Joint Planning Ordinance) governs use of land in this two-mile radius.

The proposed feedlot is located within this two-mile area, but the parties dispute whether the proposed project is subject to the Joint Planning Ordinance or the County Ordinance that governs "Urban Expansion Districts." This determination matters

2

because new feedlots are allowed as a conditional use in the former but not in "Urban Expansion Districts" established by the latter. In addition, all feedlots in McLeod County are regulated by a special McLeod County Feedlot Management Ordinance (Feedlot Ordinance).

To obtain a conditional use permit for a new feedlot under the Joint Planning Ordinance, an application must be made to the city zoning administrator. Hutchinson, Minn., Joint Planning Area Zoning Ordinance ("HJPA") § 20, subd. 2 (1997). That application is then forwarded to the Hutchinson Joint Planning Board, an advisory board, which makes a recommendation to the McLeod County Board of Commissioners (the county board) as to whether the application should be approved or denied. *Id.*, subds. 3, 4 (1997). The county board makes a final decision upon the application. McLeod County, Minn., Zoning Ordinance ("MCZO") § 17, subd. 6 (1981).

In addition to a conditional use permit, a feedlot operator must also obtain a feedlot permit in accordance with the Feedlot Ordinance. HJPA § 22, subd. 5 (1997); MCZO § 21, subd. 5 (1981); McLeod County, Minn., Feedlot Management Ordinance ("MCFMO") § 4.002 (2003). By its terms, the Feedlot Ordinance requires that proposals for new feedlots of less than forty acres apply for and receive a conditional use permit *before* any Feedlot Ordinance permit will issue. MCFMO § 7.001(h) (2003).

The Busses first applied for a conditional use permit for this same property some time before April 2013. Although this conditional use permit was initially granted, it was later vacated after a district court determined that McLeod County failed to properly

3

amend the Joint Planning Ordinance section allowing new feedlots to be established in the Hutchinson Joint Planning Area and upon which the permit was contingent.

In August 2014, after the county again amended the Joint Planning Ordinance, the Busses filed another application for the conditional use permit at issue here. The permit was to establish a new feedlot on an existing property less than 40 acres in size. The property was more than a half-mile from the Hutchinson city limits and the Busses planned to have approximately 381 animal units[1] in the dairy operation.

Although the Minnesota Department of Agriculture supported approving the permit, other nearby residents—including several of the relators here—continued to oppose the project. During the approval process, relators claimed that the proposed project threatened their property values, threatened their use and enjoyment of the property, and violated ordinances and rules.

The McLeod County Joint Planning Staff recommended approving the permit with the following conditions: (1) the Busses must maintain and keep active a McLeod County or Minnesota Pollution Control Agency feedlot permit; (2) the Busses must keep more than 50 animal units on the property at all times; (3) trees should be planted along a neighboring property line; (4) the maximum limit shall not exceed 399 animal units; (5) any future expansion shall not encroach on a 840-foot setback from the concrete floor

---

[1] An "animal unit" is a unit of measurement to assess differences in the production of animal manure. Minn. R. 7020.0300, subp. 5 (2014). For example, a mature dairy cow over 1,000 pounds is considered 1.4 animal units, a mature dairy cow under 1,000 pounds is considered 1.0 animal units, a dairy heifer equals 0.7 animal units, and a dairy calf is counted as 0.2 animal units. *Id.*, subp. 5(A).

of the milking parlor to the closest residence; and (6) any infractions of the feedlot permit or ordinances shall be reported for review and action.

On September 17, 2014, the Hutchinson Area Joint Planning Board (the planning board) held a public hearing regarding the conditional use permit application. The McLeod County Zoning Administrator addressed the planning board. He noted that because the Busses lacked adequate acreage, a manure management plan would need to be created. He also stated that the McLeod County Feedlot Committee recommended approving the application.

The planning board noted its irritation with receiving a large amount of opposing submissions just before the 4:00 p.m. deadline, but it decided not to table the issue to consider the public input it received that afternoon. The planning board did consider written materials opposing the project that it had previously received, and it opened up the meeting for any comments. Several members of the public asked questions and voiced concerns at this meeting, and the Busses also spoke at length about the feedlot. The planning board unanimously voted to recommend that the county board approve the permit application.

On September 30, 2014, the county board held a meeting at which it discussed the Busses' application. It then adopted the following findings:

> 1. The [conditional use permit] will not alter the character of the area, which is agricultural.
> 2. The proposed feedlot is on the site of a previous feedlot.
> 3. There are already up to 7 existing feedlots in the Joint Planning Area.
> 4. There are agricultural structures already present on the property site.

5

5. Because there are other existing feedlots in the area, that mitigates any adverse effect.

6. A goal of McLeod County's Comprehensive Plan is agriculture preservation.

7. The [conditional use permit] has been recommended to be approved by all underlying advisory boards.

8. There is only 1 neighbor directly affected.

9. There are several conditions attached to the [conditional use permit] to ensure compliance, as well as to reduce fumes/odor to neighboring property owners.

The county board accepted the recommendations of the Joint Planning Staff to impose the six conditions listed above, but it reduced the maximum number of animal units allowed from 399 to 300. The county board then added three conditions to the permit: (1) the feedlot will be inspected annually for three years, and then on a routine schedule; (2) the owner shall immediately clean any manure spills on public roads; and (3) no more than 10 animal units could be non-dairy or beef cattle.

With these additional conditions in place, the county board unanimously approved the permit. The relators appealed by way of writ of certiorari.

## DECISION

A conditional use permit may be granted upon a showing by the applicant that the standards and criteria in a county ordinance will be met. Minn. Stat. § 394.301, subd. 1 (2014). A county board's decision regarding a conditional use permit is quasi-judicial and reviewable by a writ of certiorari. *Interstate Power Co. v. Nobles Cnty. Bd. of Comm'rs*, 617 N.W.2d 566, 574 (Minn. 2000).

This court independently reviews a county board's approval of a conditional use permit to determine if it is unreasonable, arbitrary, or capricious. *Schwardt v. Cnty. of*

*Watonwan*, 656 N.W.2d 383, 386 (Minn. 2003). A county may act unreasonably if a relator establishes that the proposal did not meet one of the standards set forth in an ordinance, and the grant of a conditional use permit was an abuse of the county board's discretion. *Id.* at 387.

A more deferential standard of review applies to approvals of conditional use permits than to denials. *Id.* at 389 n.4. The interpretation and construction of zoning ordinances presents a question of law that this court reviews de novo. *RDNT, LLC v. City of Bloomington*, 861 N.W.2d 71, 75 (Minn. 2015).

In challenging the county board's decision to grant the conditional use permit, relators advance four contentions: (1) The one-page conditional use permit application was incomplete and missing essential information required by the relevant ordinances so that the county board's approval was unreasonable, arbitrary, and contrary to law; (2) the joint planning board and the county board failed to consider public opposition and did not take the necessary "hard look" at the proposed project; (3) applicable county ordinance provisions prohibit a conditional use permit for a new feedlot in the Hutchinson Joint Planning Area; and (4) a future district court decision will strike down the amendment to the Joint Planning Ordinance that allowed new feedlots to be sited in the Hutchinson Joint Planning Area. For the reasons set forth below, none of these contentions show that the county board acted arbitrarily or capriciously in approving the conditional use permit.

I.    **Incomplete Application**

Relators first contend that the permit must be vacated because the application lacked critical information about how the Busses would comply with state and local rules

concerning manure management.  The county asserts, and we agree, that it had sufficient information to consider the application and waived the inclusion of the missing materials.

The Busses' feedlot is within the Hutchinson Joint Planning Area.  *See* HJPA § 1, subd. 3 & Ex. A (1997) (establishing the jurisdiction of the Hutchinson Joint Planning Area).  As a new feedlot more than one-half mile from the City of Hutchinson, the Busses were required to obtain a conditional use permit.  HJPA § 15, subd. 5(2) (2014).  New feedlots must also obtain a McLeod County Feedlot Permit showing compliance with the Feedlot Ordinance.  *Id.*  When applying for a conditional use permit, the application must contain such information as is necessary to show compliance with the relevant zoning ordinances.  HJPA § 20, subd. 2; MCZO § 17, subd. 4 (1997).

Applications for conditional use permits to establish feedlots must submit a manure and waste management plan including: (1) manure handling and application techniques; (2) planned manure storage systems; and (3) leases or agreements allowing the applicant to dispose manure on land not owned by the applicant.  MCFMO § 7.006(f) (2003).

Relators contend that because the Busses' permit application lacked the manure management plan and land spreading agreements, it was incomplete.  We agree.  The Feedlot Ordinance sets forth the requirements for a conditional use permit application, and the relevant zoning ordinances require compliance with that more restrictive ordinance.  *See* HJPA § 15, subd. 4(3) (2014); MCZO § 21, subd. 5.

That the application did not strictly comply with the Feedlot Ordinance, however, is not the end of the inquiry.  For the permit to be struck down, the county board's grant

8

of the permit with the incomplete application must also have been an abuse of its discretion. *See Schwardt*, 656 N.W.2d at 387. We conclude that, under the circumstances present here, it was not.

We find the reasoning of *Schwardt* persuasive here. In *Schwardt*, an applicant sought a conditional use permit to build three hog confinement facilities on a parcel of land. *Id.* at 385. A nearby family opposed granting the permit. *Id.* After deliberation by the county board—including extensive consideration of concerns from all interested parties—the permit was granted. *Id.* at 386. This court affirmed the grant of the permit but remanded to the county board to ensure that the facility met a setback requirement. *Id.*

The supreme court reversed our remand, noting that the setback requirement is not a required standard for a conditional use permit and that the setback requirement is enforced by the county zoning administrator rather than the county board. *Id.* at 388-89. But our opinion was otherwise affirmed. Although the neighbors presented some evidence showing that the relevant zoning ordinance could not be met, the county board was not persuaded. *Id.* at 387-88. The supreme court affirmed because the board "received and considered all proffered evidence, gave both sides an opportunity to be heard, and the evidence is not so significant and one-sided as to render the approval arbitrary." *Id.* at 389.

The county board here, like the board in *Schwardt*, also had much information regarding the proposed project before it approved the conditional use permit. In addition to the materials submitted to the planning board, relators' attorney filed a letter raising

9

many of the issues we are addressing in this opinion well before the county held its public hearing and took its vote. And the Busses' attorney also wrote a letter to the county board countering those arguments. A manure management plan was discussed at the planning board meeting and the county board meeting, with the Busses assuring both boards that a manure management plan would be submitted as required for their feedlot permit. In fact, the Busses spoke at length about the details of the upcoming manure management plan, explaining when and to where they would remove the feedlot's manure. "[W]here a conditional use permit applicant informs the board of commissioners of his intention to comply with all applicable standards, the board need not resolve specific compliance issues prior to granting a conditional use permit." *Yang v. Cnty. of Carver*, 660 N.W.2d 828, 835 (Minn. App. 2003).

Additionally, while an applicant must provide a manure management plan with an application for a conditional use permit for a feedlot, the ordinances do not suggest that the county board must *approve* that management plan when it issues the permit. The responsibility of approving the manure management plan falls to the McLeod County Environmental Services Department and the McLeod County Feedlot Officer. *See* MCFMO §§ 6.001, 6.002 (2003). And before the Feedlot Officer can issue a certificate of compliance with the Feedlot Ordinance, an applicant must obtain a conditional use permit. MCFMO § 7.001(h). Here, the process had begun and the Feedlot Committee had recommended approving a feedlot permit.

The purpose of requiring a manure management plan with a conditional use permit application is to satisfy the county board that the feedlot applicant has considered and

planned its management of manure. Given the lengthy testimony by the County Zoning Administrator and the Busses about manure management—first at the planning board meeting and then at the county board meeting—and the recommendation of the McLeod County Feedlot Committee to approve the feedlot permit application, we conclude that the county board had sufficient assurances that the Busses would meet the required standards for a new feedlot.

Furthermore, the assurance of the Busses that proper manure handling protocols would be followed was not all the county board relied on: it also placed a condition on the permit requiring the Busses to obtain a McLeod County Feedlot Permit. If that condition is not met, the permit becomes null and void. And to obtain this permit, the Busses were required to submit their manure management plan. *See* MCFMO § 7.005(k) (2003) (requiring a manure and waste management plan). Therefore, while the manure management plan was missing from the conditional use permit application, the Feedlot Management Ordinance still required this plan. It ultimately must be created, filed, and approved for the conditional use permit to be valid.

The assurances by the Busses that a manure management plan would be created and followed, coupled with the condition that the Busses obtain a Feedlot Permit, which itself would require such a plan, demonstrate that the county board's granting of the permit was not unreasonable or arbitrary. In fact, given this condition, a denial of the permit may well have been unreasonable: "If a conditional use permit applicant demonstrates to the governing body that imposing a reasonable condition would

11

eliminate any conflict with the ordinance's standards and criteria, it follows that the governing body's subsequent denial would be arbitrary." *RDNT*, 861 N.W.2d at 78.

Minnesota law further supports our decision. That a manure management plan may not have been before the county board is not fatal to the application because the statute addressing applications for conditional use permits does not require that all requirements of a zoning ordinance are presently met. Instead, the statute requires an applicant to show that "the standards and criteria stated in the ordinance *will be* satisfied." Minn. Stat. § 394.301, subd. 1 (emphasis added). We conclude that the Busses' showing here was sufficient to show that they *would* satisfy all ordinance requirements.

We have addressed a similarly deficient conditional use permit application before, albeit in an unpublished case. In *Steiger v. Douglas County Board of Commissioners*, we considered an application that lacked a required map showing that a proposed feedlot was not within 1,000 feet of an existing dwelling. No. A04-1898, 2005 WL 1869471, at *2 (Minn. App. Aug. 9, 2005). Although the omission was material, we determined that it was not fatal to the application. *Id.* at *3. Because the record contained statements addressing the facts in question, we concluded that the failure could be corrected during the proceedings and that the county board could waive the requirement if other relevant information was provided and considered. *Id.*

We find this reasoning from *Steiger* persuasive. Although the absence of a manure management plan may be material, the county board had sufficient information before it to consider the facts in question and to waive its requirement.

12

Given our deferential standard of review, the discussions regarding the missing application information, and the conditions placed on the permit by the county board, we conclude that the county board did not act unreasonably or arbitrarily in granting the Busses' permit. The record shows that the site of the Busses' proposed feedlot is a previous feedlot, and many agricultural structures already exist on the property. The proposed project would not alter the character of the area because it is zoned as agricultural, and seven other feedlots operate within the Hutchinson Joint Planning Area. Moreover, the Busses' milking operation would further a goal of the McLeod County Comprehensive Plan, which seeks to preserve agriculture in the community.

## II. Public Comments

Relators further argue that the permit must be vacated because the county failed to take a "hard look" at the project, claiming that the county board ignored and rejected consideration of public input. We disagree.

Relators' argument focuses on events that occurred at the Hutchinson Joint Planning Area Board meeting. At that meeting, the planning board expressed consternation at the number of last-minute submissions regarding the feedlot that it received from various members of the public. Though it declined to table the issue to give it a chance to review all the submissions from that afternoon, it noted that it had been considering this permit for over two years. And the planning board did not refuse the request of any member of the public to speak at the hearing. In fact, the public was given ample time to comment and question the project, and several members of the community spoke at this meeting.

13

While we do not condone the planning board's decision to forego review of materials submitted within the deadline it established, this action does not make the county board's later decision arbitrary and capricious. The planning board was not the body that approved the permit; it serves as an advisory board. *See* HJPA § 20, subd. 4 ("The Joint Planning Board shall make its decision upon the application and forward its *recommendation* to the Board of County Commissioners." (emphasis added)). The power to grant the permit ultimately rested with the McLeod County Board of Commissioners. MCZO § 17, subd. 6 ("Upon receipt of the report of the Planning Commission, the Board of County Commissioners shall make a decision upon the application for a Conditional Use Permit."). And no evidence suggests that the county board failed to consider any opposition to the permit. Quite the opposite in fact: this county board placed conditions on the permit *in response to* public concerns about the feedlot. For example, the county board reduced the number of animal units that could be kept on the farm, provided for an annual inspection of the property, and required immediate cleanup of any manure spills on public roads. Without evidence that the McLeod County Board of Commissioners failed to accept evidence or testimony regarding the feedlot, we cannot say that its decision was arbitrary or unreasonable. *See Schwardt*, 656 N.W.2d at 388-89.

Relators claim that *In re Block* supports their argument. In *Block*, a county board granted a conditional use permit to a dog breeding kennel. 727 N.W.2d 166, 173 (Minn. App. 2007). One of the conditions on the permit was that all dogs that had access to the outside were to be "debarked," a surgical procedure in which dogs' vocal cords are

14

severed. *Id.* at 179-80. The county board later learned debarking was overwhelmingly disfavored in the veterinary community and considered by many to be inhumane. *Id.* at 180. This court accepted the relators' argument that the county board failed to take a "hard look" at the project in part because it failed to consider the ramifications of debarking before it affirmatively placed that condition on the permit. *Id.*

The circumstances present here are readily distinguishable from those in *Block*. Unlike *Block*, relators do not point to any conditions placed on the permit as dramatic or inhumane as the required "debarking" in *Block*. Furthermore, the debarking condition in *Block* was added to the permit without considering its ramifications. *Id.* But here, conditions were placed on the permit *because of* the possible ramifications of a new feedlot and in response to public concerns.

### III. Urban Expansion District

Relators next contend that the applicable zoning ordinance is the County Ordinance, which prohibits new feedlots. Relators claim that County Ordinance sections 9 and 17 prohibit new feedlots in the areas. Relators further assert that section 1, subdivision 7 of the Joint Planning Ordinance requires application of these more restrictive ordinances.[2] The county and the Busses counter, and we agree, that none of these sections of the Country Ordinance applies to the proposed feedlot because the land is not located within an Urban Expansion District.

---

[2] Section 1, subdivision 7, of the Hutchinson Joint Planning Area Ordinance states, "Where the conditions imposed by any provisions of this Ordinance are either more or less restrictive than comparable conditions imposed by [an]other ordinance . . . , the ordinance . . . which imposes the more restrictive condition[,] standard or requirements shall prevail." HJPA § 1, subd. 7 (1997).

Section 9 of the County Ordinance defines an Urban Expansion District, which exists to allow residential, commercial, and industrial development on the fringes of unincorporated cities. MCZO § 9, subd. 1 (1981). "The Urban Expansion District where established will generally encompass all areas within one-half mile of the city limits of cities in the County." *Id.*, subd. 2 (1981). Feedlots are not allowed in an Urban Expansion District as either a permitted use or a conditional use. *See id.*, subds. 3, 4 (1981). Section 17 of the County Ordinance also prohibits new feedlots in an Urban Expansion District. MCZO § 17, subd. 3(12)(A) (1981).

Relators contend that sections 9 and 17 govern and bar the Busses from obtaining a conditional use permit for a feedlot. This argument fails because no evidence suggests that the Hutchinson Joint Planning Area is an Urban Expansion District. The Urban Expansion District requirements apply only where an Urban Expansion District is "established." MCZO § 9, subd. 2. But nothing suggests that the Hutchinson Joint Planning Area was created as an Urban Expansion District. *See* HJPA § 1, subd. 2 (1997) (explaining intent and purpose of the Hutchinson Joint Planning Area).

The record shows that the feedlot is within the Hutchinson Joint Planning Area. *See id.*, Ex. A (map of Hutchinson Joint Planning Area jurisdiction). The Joint Planning Ordinance governing this area established seven different zoning classes, including agricultural. *See* HJPA § 3, subd. 1. The proposed project is within an agricultural zone. Feedlots are permitted in a Hutchinson Joint Planning Area agricultural zone, and new feedlots 2,640 feet from the City of Hutchinson are permitted so long as the operator obtains a conditional use permit. HJPA §§ 4, subd. 3(8) (1997), 15, subd. 5(2).

16

Even if we were to assume that that the Hutchinson Joint Planning Area is an Urban Expansion District, this argument would still fail. By its plain language, Urban Expansion District planning boards are free "to establish alternative zoning requirements for lands within the Urban Expansion District . . . ." MCZO § 9, subd. 2(3)(C). By permitting feedlots in its agricultural zones, the Joint Planning Ordinance can be understood as an exercise of this power to establish alternative zoning requirements.

Relators further claim that the record demonstrates that the Hutchinson Joint Planning Area *is* an Urban Expansion District. But the referenced map in Exhibit A of section 1 of the Joint Planning Ordinance does not establish that the Hutchinson Joint Planning Area is an Urban Expansion District. The map merely shows the jurisdiction of the Joint Planning Ordinance and is labeled "Hutchinson Area Urban Boundary District." *See* HJPA § 1, subd. 3 & Ex. A. (establishing jurisdiction of the Hutchinson Joint Planning Area). This similarity of wording does not show that the Hutchinson Joint Planning Area is an Urban Expansion District within the purview of McLeod County Zoning Ordinance section 9. Accordingly, this argument lacks merit.

**IV.    Concurrent District Court Action and Motions to Supplement the Record**

Relators finally argued that the permit should be vacated because the relators were challenging in district court an amendment to section 15 of the Joint Planning Ordinance, the section that allows new feedlots to be established as a conditional use. Relators claimed that because they would prevail in district court, the permit based on that amendment must be vacated. The district court has since granted summary judgment in favor of the Busses and the county.

17

The Busses and relators also separately filed motions to supplement the record with additional documentation. The parties claimed that this outside information supported their respective arguments, and we deferred deciding the motions until after oral argument. Because we reach our decision today without reference to the outside materials, these motions are denied as moot.

**Affirmed; motions denied.**

**HUDSON,** Judge (concurring specially)

Given our deferential standard of review, I concur with the majority's conclusion that, even though the Busses' permit application was incomplete, the county board did not act unreasonably or arbitrarily in granting the Busses' CUP. I write separately to express my concern that the current state of the law authorizes even glaring, material omissions in the permit application simply upon verbal assurances by the applicant of future compliance with governing ordinances, and assurances by the county board that adequate conditions will be subsequently imposed. But compliance in the by-and-by often results in uninformed decisions and makes it virtually impossible for the general public and directly affected parties, like appellants here, to have any meaningful input before the decision on the CUP is made.

As the majority notes, Minn. Stat. § 394.301, subd. 1 (2014) requires a CUP applicant to show that the "standards and criteria stated in the ordinance *will be* satisfied" (emphasis added). This language does suggest that a showing of future compliance is sufficient. Similarly, our supreme court, interpreting Minn. Stat. § 462.3595 (2014), recently stated that the "burden was on [the applicant] to show that it could satisfy the standards specified by ordinance." *RNDT, LLC, v. City of Bloomington*, 861 N.W.2d 71, 78 (Minn. 2015); *see also Schwardt v. Cnty. of Watonwan*, 656 N.W.2d 383, 388 (Minn. 2003) (holding that because setback requirement was a condition county zoning administrator would later enforce, county board did not act arbitrarily in granting CUP).

What constitutes a sufficient "showing" will necessarily vary case-by-case. But I suggest that this case represents the outer limits of a sufficient showing and that promises

(by applicants or county officials) of future compliance are wholly unsatisfactory, at least with respect to material requirements of the permit application. Here, the governing ordinance required, among other things, that the application include a manure management plan and a land spreading agreement. These are material, critical requirements for a proposed feedlot operation that will hold 300 animal units and generate manure equivalent to a city of approximately 3,000 people. The Busses only have a 27-acre feedlot. And as appellants noted, "[m]anure from this Project will equate to hundreds of thousands of pounds/gallons annually and will require hundreds of acres for spreading at agronomic rates." Yet the Busses did not submit a manure management plan or land spreading agreement specifically detailing how the manure would be handled or where it would be spread.

Yes, the county board conditioned the CUP on the requirement that the Busses obtain a feedlot permit which, in turn, requires a manure management plan. And yes, the Busses assured the county board they would follow proper manure handling protocols. This minimal showing of future compliance may be sufficient for today, but our courts should require more by mandating that CUP applicants strictly comply with ordinance requirements by submitting all required information with the application so that a full, meaningful hearing on the merits can be properly conducted.