*765 HUDSON, Judge
(concurring specially).
Given our deferential standard of review, I concur with the majority’s conclusion that, even though the Busses’ permit application was incomplete, the county board did not act unreasonably or arbitrarily in granting the Busses’ CUP. I write separately to express my concern that the current state of the law authorizes even glaring, material omissions in the permit application simply upon verbal assurances by the applicant of future compliance with governing ordinances, and assurances by the county board that adequate conditions will be subsequently imposed. But compliance in the by-and-by often results in uninformed decisions and makes it virtually impossible for the general public and directly affected parties, like appellants here, to have any meaningful input before the decision on the CUP is made.
As the majority notes, Minn.Stat. § 394.301, subd. 1 (2014) requires a CUP applicant to show that the “standards and criteria stated in the ordinance will be satisfied” (emphasis added). This language does suggest that a showing of future compliance is sufficient. Similarly, our supreme court, interpreting Minn.Stat. § 462.3595 (2014), recently, stated that the “burden was on [the applicant] to show that it could satisfy the standards specified by ordinance.” RDNT, LLC v. City of Bloomington, 861 N.W.2d 71, 78 (Minn.2015); see also Schwardt v. Cnty. of Watonwan, 656 N.W.2d 383, 388 (Minn.2003) (holding that because setback requirement was a condition county zoning administrator would later enforce, county board did not act arbitrarily in granting CUP).
What constitutes a sufficient “showing” will necessarily vary case-by-case. But I suggest that this case represents the outer limits of a sufficient showing and that promises (by applicants or county officials) of future compliance are wholly unsatisfactory, at least with respect to material requirements of the permit application. Here, the governing ordinance required, among other things, that the application include a manure management plan and a land spreading agreement. These are material, critical requirements for a proposed feedlot operation that will hold 300 animal units and generate manure equivalent to a city of approximately 3,000 people. The Busses only have a 27-acre feedlot. And as appellants noted, “[mjanure from this Project will equate to hundreds of thousands of pounds/gallons annually and will require hundreds of acres for spreading at agronomic rates.” Yet the Busses did not submit a manure management plan or land spreading agreement specifically detailing how the manure would be handled or where it would be spread.
Yes, the county board conditioned the CUP on the requirement that the Busses obtain a feedlot permit which, in turn, requires a manure management plan. And yes, the Busses assured the county board they would follow proper manure handling protocols. This minimal showing of future compliance may be sufficient for today, but our courts should require more by mandating that CUP applicants strictly comply with ordinance requirements by submitting all required information with the application so that a full, meaningful hearing on the merits can be properly conducted.