*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0393**

Thomas Coleman,
Appellant,

vs.

City of Stillwater,
Respondent,

RMR of Stillwater, LLC, et al.,
Respondents.

**Filed November 20, 2023**
**Affirmed**
**Halbrooks, Judge[*]**

Washington County District Court
File No. 82-CV-22-1178

Thomas E. Coleman, Stillwater, Minnesota (pro se appellant)

Paul A. Merwin, League of Minnesota Cities, St. Paul, Minnesota (for respondent City of Stillwater)

Kay Nord Hunt, Michelle K. Kuhl, Lommen Abdo, P.A., Minneapolis, Minnesota (for respondents RMR of Stillwater, LLC, et al.)

Considered and decided by Worke, Presiding Judge; Ross, Judge; and Halbrooks, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**HALBROOKS**, Judge

Appellant challenges the district court's grant of summary judgment to respondents. Because we conclude that there are no issues of material fact and that the district court did not err in its application of the law, we affirm.

## FACTS

Respondent RMR of Stillwater LLC, owns respondent Stillwater Towing, Inc. (collectively Stillwater Towing), which has operated an automobile impound lot in the city of Stillwater for 40 years. In January 2020, Stillwater Towing bought a 5.3-acre parcel approximately one-tenth of a mile down the street from its primary location with the intent of using the new lot to store automobiles outside. The area is zoned BP-I—business park industrial. BP-I zoning allows for "light industrial and office uses," Stillwater, Minn., Code of Ordinances (SCO) § 31-321(a) (2023), as well as "auto repair and related services." SCO § 31-325 (2023). Outdoor storage is permitted with a conditional use permit (CUP). *Id.*

Stillwater Towing applied for a CUP in order to conduct its towing and impound business on the property. It also applied for a variance to the city's tree and forest protection ordinance, SCO § 31-522 (2023), anticipating the need to remove trees from the site. The Stillwater Planning Commission accepted written comments, held a public hearing, and reviewed a report prepared by the city staff. The commission voted to approve the CUP with multiple conditions and denied the tree-variance request.

2

Appellant, Thomas Coleman, and others appealed the decision to the Stillwater City Council.[1] Stillwater Towing first appealed the variance denial but subsequently withdrew its variance application. The city council accepted written comments, held a public hearing, and reviewed an updated staff report. The council decided to table the matter for a few weeks in order to more closely examine the city code and to develop appropriate conditions if the conditional use was approved. The council ultimately adopted a resolution approving the CUP with 21 conditions attached.

Coleman petitioned the district court for mandamus, asking the district court to compel the City of Stillwater to "enforce the zoning codes and ordinances" by rescinding the CUP and enforcing the tree ordinance. Stillwater Towing moved to intervene pursuant to Minn. R. Civ. P. 24.01, and the district court granted the motion. The city and Stillwater Towing submitted separate motions for summary judgment.

The district court determined that Coleman had failed "to make even a minimal showing that mandamus is appropriate." With respect to respondents' motions, the district court concluded that there were no issues of material fact and that the city's decision was supported by the record and was not arbitrary or capricious. The district court granted summary judgment in favor of the city and Stillwater Towing and dismissed Coleman's claims.

This appeal follows.

---

[1] The decision of whether to grant a CUP in Stillwater is made by the planning commission with the right to appeal the commission's decision to the city council. SCO § 31-204, subd. 5 (2023).

**DECISION**

Coleman challenges the district court's summary-judgment dismissal of his claims arguing that the district court erred in (1) determining that the city's CUP decision was supported by a rational basis and that the CUP's conditions were sufficient; (3) determining that respondent Stillwater Towing did not violate the city's tree and forest protection ordinance; and (4) failing to rule on appellant's "motion for a revote."

On appeal from summary judgment, this court reviews "the grant of summary judgment de novo to determine whether there are genuine issues of material fact and whether the district court erred in its application of the law." *Montemayor v. Sebright Prod., Inc.*, 898 N.W.2d 623, 628 (Minn. 2017) (quotation omitted). "In order to successfully oppose summary judgment, appellant must extract *specific*, admissible facts from the voluminous record and particularize them for the [court]." *Kletschka v. Abbott-Nw. Hosp., Inc.*, 417 N.W.2d 752, 754 (Minn. App. 1988), *rev. denied* (Minn. Mar. 30, 1988). If reasonable persons might draw different conclusions from the evidence presented, summary judgment should be denied. *Ill. Farmers Ins. Co. v. Tapemark Co.*, 273 N.W.2d 630, 633 (Minn. 1978).

## I. Conditional-Use Permit

Coleman argues that the district court erred in determining that the city council's decision to issue the CUP was not unreasonable, arbitrary, or capricious. On appeal from a district court's review of a city's zoning decision, this court reviews a city's approval of a CUP to determine whether the decision was unreasonable, arbitrary, or capricious independent of the district court's findings and conclusions. *Roselawn Cemetery v. City of*

4

*Roseville*, 689 N.W.2d 254, 258 (Minn. App. 2004); *see also Schwardt v. County of Watonwan*, 656 N.W.2d 383, 386 (Minn. 2003). A city has broad discretion to approve or deny a CUP. *BECA of Alexandria, L.L.P. v. County of Douglas ex rel. Bd. of Comm'rs*, 607 N.W.2d 459, 463 (Minn. App. 2000). Accordingly, this court exercises deference in reviewing the city's CUP decision, particularly when it is an approval. *Big Lake Ass'n v. St. Louis Cnty. Plan. Comm'n*, 761 N.W.2d 487, 491 (Minn. 2009).

In determining whether the city acted unreasonably, arbitrarily, or capriciously, this court follows a two-step process. *RDNT, LLC v. City of Bloomington*, 861 N.W.2d 71, 75 (Minn. 2015). "First, we must determine if the reasons given by the city were legally sufficient." *Id.* at 75-76. If they are legally sufficient, we must determine whether "the reasons had a factual basis in the record." *Id.* at 76. The city council need not make explicit findings supporting its decision so long as a reviewing court can determine that the "order granting a CUP . . . demonstrate[s] the board's conclusion that the proposal has satisfied each of the zoning ordinances conditions for approval." *Schwardt*, 656 N.W.2d at 389.

Coleman does not argue that the city's reasons for granting the CUP were legally insufficient. Rather, Coleman contends that the reasons given by the city council in support of upholding the CUP lack a factual basis in the record. Coleman argues the findings made in support of granting the CUP were "decisively vacated" by city staff's findings prepared for the city council. Coleman cites no authority, and we are aware of none, to support his argument that the city council was bound by the city staff's report. Rather, local decision-makers have discretion in how they weigh conflicting evidence. *Billy Graham Evangelistic Ass'n v. City of Minneapolis*, 667 N.W.2d 117, 124 (Minn. 2003). Upon review, this court

5

does not assume the role of the city council and reweigh the conflicting evidence, but instead "review[s] the record to determine whether there was . . . evidence to support the zoning authority's decision." *Id.* (quotation omitted).

In this case, the city council received public comments, held multiple hearings, and had multiple staff reports prepared as part of its decision-making process. The city council debated in public session, discussed the rationale for its decision, and adopted written findings in its approval resolution. During the hearings, the mayor responded to the concerns raised by Coleman and observed that Stillwater Towing's business has been operating across the street from the property for 40 years with no nuisance problems. The mayor explained that the proposal would move Stillwater Towing to a location 450 feet from residences, whereas its previous location was only 10 feet from residences. The mayor elaborated that the property is "certainly safer from a public safety standpoint, in terms of its entrance and exits. It moves [Stillwater Towing] further away from residential, from homes, than its current location."

The mayor stated that through "landscaping plans, and fencing and screening and tree growth, and all of the environmental conditions that have already been outlined [in the planning commission's findings]," the CUP could be granted "in a way that doesn't have an impact on the neighborhood and is ultimately better for the environment and public safety." The city council members noted that they would "do everything in [their] power to [impose conditions that] minimize the impact to the neighborhood in a way that's going to help our environment" and that the location would be "better for the environment than its current location, and that's been a focus of [the] council and [the] city for a long time."

The city council also discussed how the CUP provided an opportunity to create conditions, such as water-runoff controls, that would apply to the new site for Stillwater Towing and create more protection for the neighborhood than the old site, which had no conditions.

The city council ultimately adopted a resolution approving the CUP, upholding the planning commission's decision and supplementing the conditions placed upon the permit. The city council found that

> the proposed structure or use conforms to the requirements and the intent of the zoning code, the comprehensive plan, relevant area plans and other lawful regulations and that, with certain condition, the use or structure will not constitute a nuisance or be detrimental to the public welfare of the community.

The city council imposed 21 conditions on the CUP, including limits on the way automobiles were stored, prohibitions on other uses, installation of fences, requirements for landscaping and vegetation, tree replacement, lighting specifications, stormwater controls, environmental testing of water runoff, and that the CUP is subject to review if there are neighborhood complaints.

The record demonstrates that the city council considered each finding required by SCO § 31-207(d) (2023) before voting to uphold the planning commission's decision and denying the appeal.[2] The reasons given by the city council have a factual basis in the record and show that the council considered the conflicting city staff reports and ultimately

---

[2] SCO § 31-207(d) states that before approving a conditional use permit, the governing body must determine that: "(1) The proposed structure or use conforms to the requirements and intent of this chapter, and of the comprehensive plan, relevant area plans and other lawful regulations; (2) Any additional conditions necessary for the public interest have been imposed; and (3) The use or structure will not constitute a nuisance or be detrimental to the public welfare of the community."

exercised their discretion in weighing the evidence. We therefore conclude that the city council's determination to grant the CUP is not in error. This court will not substitute its judgment for that of the city council's when its decision was not unreasonable, arbitrary, or capricious.

## II. Writ of Mandamus

Coleman also argues the district court erred in declining to issue a writ of mandamus ordering that the city enforces its tree and forest protection ordinance, SCO § 31-522, on Stillwater Towing's "deforestation" of its property. We are not persuaded.

"To be entitled to mandamus relief, [a party] must show that: 1) the city failed to perform an official duty clearly imposed by law; 2) he suffered a public wrong and was specifically injured by the city's failure; and 3) he has no other adequate legal remedy." *Breza v. City of Minnetrista*, 725 N.W.2d 106, 109-10 (Minn. 2006) (quotation omitted). On appeal from a district court's order denying a petition for mandamus relief, we will reverse the district court's decision only when "there is no evidence reasonably tending to sustain the [district] court's findings." *Popp v. County of Winona*, 430 N.W.2d 19, 22 (Minn. App. 1988) (citing *State ex rel. Banner Grain Co. v. Houghton*, 170 N.W. 853, 853 (Minn. 1919)), *rev. denied* (Minn. Nov. 23, 1988).

Coleman presented no specific, affirmative evidence showing that the city failed to enforce the ordinance or that Stillwater Towing violated the ordinance. The tree and forest protection ordinance states that a development may not reduce the number of trees on a site by more than 35% and, if more than 35% are removed, trees can be replaced at a 1:1 ratio. SCO § 31-522 subds. 3(d), 5(c). Stillwater Towing submitted as evidence, in support of

8

its motion for summary judgment, a tree inventory prepared for the property by a forestry consulting company. The inventory showed that there were 267 trees on the property and less than 80 had been removed—which did not violate SCO § 31-522. The evidence Coleman submitted in support of his petition included various photographs. The photographs do not show any signs or indicia of tree removal, nor do they identify the locations where the photographs were taken. Upon review of the record, there is no genuine issue of material fact as to whether Coleman is entitled to a writ of mandamus.

### III. Issues Not Properly Before This Court

Coleman also alleges the district court erred by failing to consider his "Motion for the City Council to revote" and "exclusion of biased City Council members" from participation in the revote. "Appellate courts cannot assume a district court erred by failing to address a motion, and silence on a motion is therefore treated as an implicit denial of the motion." *Palladium Holdings, LLC v. Zuni Mortg. Loan Tr. 2006-OA1*, 775 N.W.2d 168, 177-78 (Minn. App. 2009), *rev. denied* (Minn. Jan. 27, 2010). To the extent that Coleman's argument can be construed as an allegation that the CUP decision was arbitrary and capricious because of the bias of the city council members, we are not persuaded.

Coleman does not identify any specific, affirmative evidence showing actual bias. To the contrary, the record shows that the city council recognized the concerns Coleman raised about the potential impacts to the environment and the surrounding neighborhood and emphasized that their decision was based, not on their personal desires, but on whether, when applying the applicable zoning code, the CUP should be granted. The record shows that the city council engaged in a robust discussion and received and considered competing

9

views on the CUP and its decision was based on the evidence before it. For these reasons, when viewing the evidence in the light most favorable to Coleman, we conclude that Coleman has failed to present evidence that would establish a genuine issue of material fact as to whether the CUP decision was arbitrary and capricious because of the city council's alleged bias.

Coleman also challenges the city's amendment of its ordinance governing nonconforming uses, SCO § 31-216 (2023), arguing that the amendment "greatly increases the harm to . . . property owners," and asks this court to reverse the city's CUP decision. Coleman cites no authority which would allow this court to reverse a city's CUP decision on this basis. An assignment of error in a brief based on "mere assertion" and not supported by argument or authority is forfeited unless prejudicial error is obvious on mere inspection. *Schoepke v. Alexander Smith & Sons Carpet Co.*, 187 N.W.2d 133, 135 (Minn. 1971). Further, because Coleman did not present this argument to the district court, we decline to consider it for the first time on appeal. *Rose Cliff Landscape Nursery, Inc. v. City of Rosemount*, 467 N.W.2d 641, 644 (Minn. App. 1991) (stating a challenge to a zoning ordinance, not presented to the district court, "will not be considered for the first time on appeal"); *see also Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (an appellate court will not consider matters not argued to and considered by the district court).

**Affirmed.**