The BIG LAKE ASSOCIATION,
Appellant,

v.

SAINT LOUIS COUNTY PLANNING
COMMISSION, et al.,
Respondents,

Big Lake Properties, LLC, John A.
Swenson, Sheryl L. Swenson, and
George P. Nall, Respondents.

No. A06–2305.

Supreme Court of Minnesota.

Feb. 26, 2009.

James P. Peters, Karna M. Peters, Peters & Peters, PLC, Glenwood, MN, for appellant.

Melanie S. Ford, St. Louis County Attorney, Thomas G. Stanley, Assistant County Attorney, Duluth, MN, for respondent, Saint Louis County Planning Commission, et al.

Joseph J. Mihalek, Fryberger, Buchanan, Smith & Frederick, P.A., Duluth, MN, for respondents, Big Lake Properties, LLC, John A. Swenson, Sheryl L. Swenson and George P. Nall.

## OPINION

DIETZEN, Justice.

This appeal concerns the decision of the Saint Louis County Planning Commission to grant a conditional use permit (CUP) to Big Lake Properties, LLC, to convert an existing resort into a common interest community and to add 11 new cabins to the resort. By writ of certiorari, The Big Lake Association sought review of the decision. Among other issues, the Association argued that the Planning Commission erroneously approved the CUP as a commercial planned unit development when the proposal should have been considered as a residential planned unit development. The court of appeals affirmed the decision of the Planning Commission, concluding that the approval of the CUP was not arbitrary and capricious, and that the issue concerning the classification of the resort conversion was waived. We granted review on the waiver issue. We affirm.

Appellant Big Lake Association (Association) was organized to advance and promote the interests of property owners on Big Lake. Its principal purpose is to preserve the natural condition of Big Lake. Big Lake is immediately adjacent to and is a designated access lake for the Boundary Waters Canoe Area Wilderness. Big Lake is classified by the Minnesota Department of Natural Resources as a recreational development lake. Motorized watercraft are permitted on the lake.

Respondents George P. Nall, John A. Swenson, and Sheryl L. Swenson own respondent Big Lake Properties, which in 2005 acquired an existing resort, Big Lake Wilderness Lodge Resort. The resort is located on Big Lake and encompasses 23 acres. The resort currently consists of 13 rental cabins that range in size from 282 to 684 square feet. There also is a 3,418 square foot lodge, as well as other storage buildings and sheds.

Saint Louis County regulates the subject property. The resort is located in an area zoned as "shoreland mixed use," which allows planned unit developments as a conditional use. The County has delegated the responsibility for approving conditional use permits to respondent Saint Louis County Planning Commission.

In September 2006 Big Lake Properties submitted a proposal to increase the number of cabin units from 13 to 24 and to convert the resort into a commercial common interest community. In response to a question on the application form, Big Lake Properties indicated that the existing business type is "Resort/Campground/B & B" and the proposed business type is "Residential Seasonal." The proposal stated that the long-range plans for the property are "[t]o sell existing cabins (units) to private individuals with the purpose of continued rental in a resort setting." Along with the application form, Big Lake Properties included a concept statement, rules for the homeowners' association, and a draft declaration of covenants. Under these documents, ownership of the cabins would be private, while the infrastructure and open space would be maintained by an association. The owners of the cabins would re-

ceive time at the resort and rental income from the cabins in exchange for their investment. All owners would be required to participate in the rental program.

The Saint Louis County Planning Department reviewed the proposal and prepared a staff report for the Planning Commission. The report described the nature of the proposal as "a commercial planned unit development consisting of a total of 24 units." The report stated that the proposal "represents an expansion and continuation" of the historic use of the property as a commercial resort "with a change in the type of ownership and operation." Analyzing the proposal under the criteria for a commercial planned unit development, the Planning Department concluded that the proposal to add 11 new units to the resort did not violate the density standards of the ordinance. The Planning Department also concluded that the proposal met the other criteria of the ordinance and recommended approval of the conditional use permit, subject to a number of conditions.

The Planning Commission conducted a public hearing on the proposal. Notice of the hearing was published and sent to affected property owners. The notice stated:

> The Planning Commission will consider a commercial planned unit development consisting of a total of 24 units. Thirteen of the units are existing, and 11 are new construction. Ownership of the units would be private, while the infrastructure and open space would be maintained by association. The property would continue to operate as a resort.

At the hearing, Planning Department staff described the property, the proposed development, and the staff recommendation. The Planning Commission received written comments from 21 people and heard testimony from 10 people, including representatives from Big Lake Properties and owners of property on Big Lake. Those opposing the proposal raised concerns that included an old remediated environmental problem on the site and the density of the proposal, which increased the number of cabin units from 13 to 24. In addition, one neighboring property owner questioned whether the owners of the resort "are actually on Big Lake to run a resort or turn a quick profit on the sale of lakeshore lots." A representative from Big Lake Properties denied they were "developers"; rather he described them as "resorters who have figured out a way to survive." Following the hearing, the Planning Commission voted unanimously to approve the conditional use permit, subject to 14 conditions.

By writ of certiorari, the Association appealed the Planning Commission's decision to the court of appeals, raising a number of issues, including the proper classification of the proposal. The court of appeals affirmed the decision to grant the conditional use permit, concluding that the requirements of the ordinance had been met and the decision was not unreasonable or arbitrary and capricious. *Big Lake Ass'n v. Saint Louis County,* No. A06–2305, 2008 WL 663813 (Minn.App. Mar.11, 2008). The court of appeals also concluded that the Association had waived the argument that the Planning Commission acted arbitrarily in allowing the proposal to proceed as a commercial, rather than residential, planned unit development, concluding that the issue was not raised before the Planning Commission, and the Planning Commission had no opportunity to address it. *Id.* at *6.

I.

The Association argues that the County should have treated the Big Lake Properties proposal as a residential, rather than commercial, planned unit development.

Claiming that the proposal does not meet the density requirements for a residential planned unit development, the Association contends that the approval of the conditional use permit was arbitrary and capricious. The County and Big Lake Properties contend that this argument was waived because it was not raised before the Planning Commission.

A county may designate by ordinance certain types of developments, including planned unit developments, as conditional uses under zoning regulations. Minn. Stat. § 394.301, subd. 1 (2008); see St. Louis County, Minn., Ordinance 46, art. V, § 5.04 (2007) (designating planned unit developments as a conditional use within shoreland mixed use zoning districts). The Saint Louis County Zoning Ordinance describes a commercial planned unit development as typically involving "transient, short-term lodging spaces," with operations that are "essentially service-oriented," for example, hotels and motels, resorts, and recreational vehicle and camping parks. St. Louis County, Minn., Ordinance 46, art. II, § 6. In contrast, in a residential planned unit development, "the nature of [the] residency is nontransient and the major or primary focus of the development is not service-oriented," for example, apartments, manufactured home parks, time-share condominiums, townhouses, and cooperatives. Id. The classification of the Big Lake Properties proposal is important here, because greater density is allowed in commercial planned unit developments than in residential planned unit developments. See id. art. VII, §§ 4–5.

Before we can proceed to the merits of the Association's argument, we must first decide the waiver issue. The County and Big Lake Properties contend that the Association waived the residential versus commercial planned unit development argument by failing to raise the issue before the Planning Commission. The County suggests that had the issue been properly raised, Planning Department staff would have been able to respond and the Planning Commission would have been able to decide the issue. The Association, on the other hand, contends that the issue was properly raised, noting that "[t]he public fairly raised concerns about density and lot size before the County acted."

■ A county may approve a conditional use permit "upon a showing by an applicant that standards and criteria stated in the ordinance will be satisfied." Minn. Stat. § 394.301, subd. 1. The decision of a county zoning authority to approve a conditional use permit constitutes a quasi-judicial decision. *Dead Lake Ass'n v. Otter Tail County*, 695 N.W.2d 129, 134 (Minn.2005); see *Honn v. City of Coon Rapids*, 313 N.W.2d 409, 417 (Minn.1981) (explaining that the decision to grant a zoning variance or special use permit is quasi-judicial because "the zoning authority is applying specific use standards set by the zoning ordinance to a particular individual use"). A writ of certiorari is "an extraordinary remedy" that allows appellate review of a quasi-judicial decision. *Dead Lake Ass'n*, 695 N.W.2d at 134; see *Interstate Power Co. v. Nobles County Bd. of Comm'rs*, 617 N.W.2d 566, 574 & n. 5 (Minn.2000) (noting that a quasi-judicial decision of a county zoning authority is reviewable by writ of certiorari, "because the legislature has not provided for judicial review of zoning decisions of county boards in the district court").

Generally, our review of a quasi-judicial decision is limited to an examination of the record made by the local zoning authority. *E.g., Swanson v. City of Bloomington*, 421 N.W.2d 307, 313 (Minn.1988) ("Where the municipal proceeding was fair and the record clear and complete, review should be

on the record."). For example, we have noted that when a county zoning authority makes a decision on a conditional use permit, the reviewing court typically should "confine itself at all times to the facts and circumstances developed before that body." *In re Livingood*, 594 N.W.2d 889, 893 n. 3 (Minn.1999) (internal quotation marks omitted).

■ Further, our standard of review is deferential, particularly when the local zoning authority has made the decision to approve a conditional use permit. *Schwardt v. County of Watonwan*, 656 N.W.2d 383, 389 n. 4 (Minn.2003) (noting that "[w]e have traditionally held CUP approvals to a more deferential standard of review than CUP denials"). "We review a county's decision to approve a CUP independently to see whether there was a reasonable basis for the decision, or whether the county acted unreasonably, arbitrarily, or capriciously." *Id.* at 386.

■ Our limited and deferential review of a quasi-judicial decision is rooted in separation of powers principles. *See Dead Lake Ass'n*, 695 N.W.2d at 134. County zoning authorities have "wide latitude" in making decisions on conditional use permits, *Schwardt*, 656 N.W.2d at 386, and except in rare cases where there is no rational basis for the decision, "it is the duty of the judiciary to exercise restraint and accord appropriate deference to civil authorities" in routine zoning matters, *White Bear Docking & Storage, Inc. v. City of White Bear Lake*, 324 N.W.2d 174, 176 (Minn.1982). Certiorari "mandates nonintrusive and expedient judicial review," *Dietz v. Dodge County*, 487 N.W.2d 237, 239 (Minn.1992), which "ensures that the judiciary does not encroach upon the constitutional power spheres of the other two branches of government," *Meath v. Harmful Substance Comp. Bd.*, 550 N.W.2d 275, 281 n. 2 (Minn.1996) (Anderson, J., concurring specially). We have stressed the limited role of the judiciary in reviewing zoning decisions, stating that "[t]he court's authority to interfere" in these matters should be "sparingly invoked." *White Bear Docking*, 324 N.W.2d at 175.

To allow parties to litigate an issue on certiorari review that was not raised before the local zoning authority would encroach on the county's broad authority in making quasi-judicial decisions. But the question of whether a zoning or land use planning issue was properly raised is not always easily determined. Our approach is not to apply a wooden or inflexible formalistic test. Rather, we review the record to determine whether the issue was fairly raised for consideration by the zoning authority. The issue does not need to be framed in precise legal terms, but there must be sufficient specificity to provide fair notice of the nature of the challenge so that the zoning authority has an opportunity to consider and address the issue. *Cf. In re Stadsvold*, 754 N.W.2d 323, 327 (Minn.2008) (concluding that the issue of whether setback requirements in a county ordinance could be applied to a grandfathered nonconforming lot was not presented to or considered by the county board of adjustment and therefore was waived).

■ We conclude that the issue regarding the classification of the planned unit development was not fairly raised for consideration by the Planning Commission. The notice of public hearing clearly stated that the Planning Commission was considering a proposal for "a commercial planned unit development consisting of a total of 24 units" and "the property would continue to operate as a resort." The issue here could have been preserved in a variety of ways including an argument that the proposal did not fall within the definition of a commercial planned unit development or that

the proposal violated the density requirements for a residential planned unit development.

The Association claims that the Planning Commission had fair notice of the issue based on written submissions and in-person appearances at the public hearing. The Association relies on an e-mail from a neighboring property owner, who questioned whether the resort owners "are actually on Big Lake to run a resort," but these doubts about the true intentions of the resort owners did not give the Planning Commission fair notice of a challenge regarding the appropriate classification of the proposal as submitted. The Association also asserts that the public expressed "concerns about density and lot size." But generalized complaints regarding the density of the proposal, which are often raised by local property owners, did not give the local zoning authority fair notice that the proposal should be considered a residential planned unit development, rather than a commercial planned unit development. No argument was made that the County was erroneously evaluating the proposal as a commercial planned unit development, that the proposal should have been considered as a residential planned unit development, or that the proposal exceeded the density allowed under the ordinance for a residential planned unit development. Therefore, the Association's argument raised on certiorari review regarding the classification of the proposal was waived.

Although the issue regarding the appropriate classification of the proposal was waived, even if we were to consider the issue on the merits, we would conclude there was a "reasonable basis" to consider the proposal as a commercial planned unit development. *Schwardt*, 656 N.W.2d at 386. Under the zoning ordinance, the definition of a commercial planned unit development includes resorts. St. Louis County,

Minn., Ordinance 46, art. II, § 6. The Big Lake proposal contemplates continual use as a resort, and that the rental agent will promote rental of the units like a resort. Thus, consideration of the proposal as a commercial planned unit development is supported by the record. Despite the change in ownership structure, the proposal indicates that the long-range plans for the cabins are "continued rental in a resort setting." According to Big Lake Properties, "After the conversion, the resort guests will be guests of the individual owners who will utilize the services of a resort rental agent to market their units." The zoning ordinance specifically provides that "[r]esidential structures where an agent is employed to promote rental of units in a manner similar to a resort shall be considered a commercial planned unit development." St. Louis County, Minn., Ordinance 46, art. II, § 6. Further, the conditional use permit issued by the Planning Commission requires that the property continue to operate as a resort by imposing the following conditions: "[a] resort license shall be in effect" at all times; "[a]ll units must participate in the association"; and "[a]ll units must participate in the rental pool." Thus, even if the issue were not waived, we would reject the Association's argument regarding the proper classification of the proposal.

## II.

As a final matter, the Association argues that the Planning Commission's explanation of the decision to grant the conditional use permit was not sufficient to support judicial review. According to the Association, the decision did not contain an adequate explanation of the reasons for approving Big Lake Properties' proposal. We conclude that this issue is not properly before us. The Association did not raise this issue before the court of appeals or in its petition for review. We generally do

not consider issues that were not raised and briefed before the court of appeals. *See In re Welfare of M.D.O.*, 462 N.W.2d 370, 379 (Minn.1990).

Affirmed.