*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-0407**

Whitefish Area Property Owners Association, et al.,
Relators,

vs.

Crow Wing County Board of Commissioners,
Respondent,

Minnesota-Iowa Baptist Conference,
Respondent.

**Filed February 17, 2015**
**Affirmed**
**Peterson, Judge**

Crow Wing County Board of Commissioners

John H. Erickson, Brainerd, Minnesota (for relators)

Donald F. Ryan, Crow Wing County Attorney, Brainerd, Minnesota; and

Jason J. Kuboushek, Iverson Reuvers, LLC, Bloomington, Minnesota (for respondent Crow Wing County Board of Commissioners)

Paul M. Floyd, Wallen-Friedmand & Floyd, P.A., Minneapolis, Minnesota (for respondent Minnesota-Iowa Baptist Conference)

        Considered and decided by Peterson, Presiding Judge; Larkin, Judge; and

Klaphake, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**PETERSON**, Judge

Relators Whitefish Area Property Owners Association, et al., challenge the decision of respondent Crow Wing County Planning Commission to approve respondent Minnesota-Iowa Baptist Conference's application to amend a previously approved conditional-use permit. We affirm.

## FACTS

The conference has operated a church camp on a 145-acre tract of land on Big Trout Lake since 1945. In August 2013, after acquiring an adjacent 100-acre tract of land, with shoreline frontage on Arrowhead Lake, the conference submitted an application to amend its 2005 conditional-use permit (CUP) to establish a new camp, Wild Woods Camp, on the Arrowhead Lake property and on a 40-acre tract previously owned by the conference but not developed. The conference requested a permit to construct four housing clusters with five cabins each to house a maximum of 200 children, a dining hall for up to 100 people, rest rooms and a shower house, staff housing for up to 60 people, a boat and equipment storage building, and a parking area with luggage depots. The camp will be operated during the summer months and will include a mini-golf course, target ranges, sports fields, a fishing pond, a waterpark, and an equestrian center. The camp's uses of Arrowhead Lake will be limited to canoeing, kayaking, paddleboating, a motorized boat used by a lifeguard, and cane-pole fishing from one or two docks. At the existing Trout Lake camp, the conference proposed

constructing a new office building, converting the existing main office into a multi-function building, and expanding cabins.

The CUP process was suspended while the Crow Wing County Board of Commissioners considered a citizens' petition requesting completion of a mandatory or discretionary environmental assessment worksheet (EAW). The CUP process resumed following the board's denial of the request.[1]

As part of the CUP process, the county received comments from the Minnesota Department of Natural Resources (DNR). The DNR recommended:

> [1.] Future proposed docking plans should be submitted to DNR for review of consistency with MN Rule 6120.3800, subp. 6B 2(e) and Minn. Rule 6115.
>
> [2.] DNR has identified the Arrowhead Lake (18-366) shoreline on the project parcel as Sensitive Shoreline. The Planning Commission should incorporate conditions in any CUP approval that preserve the natural shoreline habitat, such as buffers or more stringent vegetative alteration standards near the shoreline.
>
> [3.] The project area is located in a minor watershed designated Enhance-Protection per the County Water Plan. The proposed CUP Amendment shows 9.6% impervious surface coverage. There is an opportunity to preserve the existing undisturbed areas in the project area via restrictions, covenants, easements, etc., beyond the required 50% for open space. DNR would support such efforts.

The planning commission held a public hearing on the conference's application. At the beginning of the hearing, county staff provided background information about the

---

[1] This court affirmed the board's denial of the request for an EAW. *Whitefish Area Property Owners Ass'n v. Crow Wing County Bd. of Comm'rs*, No. A13-2007 (Minn. App. Feb. 17, 2015).

3

conference's prior CUP approvals and the EAW proceeding. Staff also noted that the conference had submitted a detailed site plan, an impervious-surface survey, a lighting plan, a parking plan, a stormwater plan, septic maps, a wetland delineation, and information regarding screening of the property. In opposing the conference's application, citizens raised concerns about increased traffic on County Road 134, noise, lighting, screening, and potential damage to wild-rice beds and habitat. The conference responded that it had moved buildings away from the lake to reduce noise, increased building distances from property lines, and adopted the township's screening recommendations for adding evergreen trees instead of creating berms. The conference agreed to follow the county highway department's traffic recommendations and the DNR's recommendations for vegetation near Arrowhead Lake. The planning commission noted that the camp's proposed structures would not be close to neighbors or Arrowhead Lake and that the increase in impervious surface area would not be significant.

Following the hearing, the planning commission approved the conference's application to amend the 2005 CUP with 14 conditions. The board found that with the improvements to County Road 134 and the buffers between the improvements and Arrowhead Lake and neighboring properties, the amendment would have very little impact. Church camps are a conditional use under the shoreland and rural residential zoning district, and the proposed expansion was within the 25% allowed under the county land-use ordinance. The planning commission found that the proposed use would further the county's comprehensive-plan policy of maintaining and enhancing parks, recreation

4

and open space for residents and visitors while preserving the county's natural areas and open space. The planning commission found that the proposed use would not have any adverse effect on property values and future development in the area or on public utility, public services, roads, and schools. The planning commission found that environmental impacts would be minimized by the stormwater plan and septic-system conditions.

This certiorari appeal followed.

## D E C I S I O N

A CUP is a protected property right that runs with the land. *Northpointe Plaza v. City of Rochester*, 465 N.W.2d 686, 689 (Minn. 1991). A county zoning authority may approve a CUP when the applicant demonstrates compliance with the "standards and criteria stated in the ordinance." *Big Lake Ass'n v. St. Louis Cnty. Planning Comm'n*, 761 N.W.2d 487, 490 (Minn. 2009) (quoting Minn. Stat. § 394.301, subd. 1 (2008)). Appellate review of a quasi-judicial zoning decision "is limited to an examination of the record made by the local zoning authority." *Id.* In reviewing a zoning authority's approval of a CUP, "the reviewing court typically should confine itself at all times to the facts and circumstances developed before that body." *Id.* at 491 (quotation omitted).

> [O]ur standard of review is deferential, particularly when the local zoning authority has made the decision to approve a conditional use permit. *Schwardt v. County of Watonwan*, 656 N.W.2d 383, 389 n.4 (Minn. 2003) (noting that "[w]e have traditionally held CUP approvals to a more deferential standard of review than CUP denials"). "We review a county's decision to approve a CUP independently to see whether there was a reasonable basis for the decision, or whether the county acted unreasonably, arbitrarily, or capriciously." *Id.* at 386.

5

*Id.* "For a challenge to a CUP to succeed, there must be a showing that the proposal did not meet one of the standards set out in the Ordinance and that the grant of the CUP was an abuse of discretion." *In re Block*, 727 N.W.2d 166, 177-78 (Minn. App. 2007) (citations omitted).

The county land-use ordinance sets forth criteria for the planning commission to consider when deciding an application for a CUP or an amendment to a previously approved CUP. The ordinance states:

> In considering an application, the Planning Commission/Board of Adjustment shall determine and make findings for approval or denial on:
> A. The impact of the proposed use on the health, safety, and general welfare of the occupants in the surrounding neighborhood;
> B. The ability of the proposed use to meet the standards of this ordinance;
> C. The ability of the proposed use to meet goals and policies adopted within the Comprehensive Plan;
> D. The effect of the proposed use on property values and future development of the land in the surrounding neighborhood;
> E. The effect of the proposed use on public utility, public services, roads and schools;
> F. The effects of the proposed use on the environment including its impact on groundwater, surface water and air quality; and
> G. The adequacy of water supply, subsurface sewage treatment system facilities, erosion control and stormwater management are provided pursuant to applicable standards.

Crow Wing County Land Use Ordinance (CWLUO), § 7.4 (2013). The planning commission's findings address all of these criteria. Relators object to the planning commission's handling of shoreland impact, traffic, impact on neighbors, and stormwater.

6

*1.     Shoreland Impact*

Conditions 7 and 12 require the conference to "[o]btain [w]ater [a]ppropriation permits from [DNR] for dockage and any vegetation removal" and prohibit "additional clearing along the shoreline of Arrowhead Lake other than what is already existing." These conditions address two of the three comments made by the DNR, and relators have failed to show that they do not satisfy ordinance requirements. Relators cite section 7.5 of the ordinance, which states that the planning commission "may impose additional conditions." But the term "may" is permissive, not mandatory. *See* Minn. Stat. § 645.44, subd. 15 (2014) (stating that when construing statutes, may is permissive rather than mandatory); *see also Eagan Econ. Dev. Authority v. U-Haul Co. of Minn.*, 787 N.W.2d 523, 535 (Minn. 2010) (stating that rules of statutory construction apply to ordinances).

Relators argue that the CUP fails to adequately protect Arrowhead Lake and its shoreland. But the record does not contain evidence showing that the activities proposed for Arrowhead Lake have the potential for negative impact on water quality or habitat. For example, at the public hearing, concerns were raised about potential damage to wild-rice beds. But relators cite no evidence that cane-pole fishing or increased use of Arrowhead Lake by nonmotorized watercraft have any potential to damage wild-rice beds.

Relators also cite ordinance section 11.5, which establishes performance standards for the issuance of any permit for a shoreland protection zone or a shoreland buffer zone, as support for their argument that the commission's CUP decision was erroneously premised on a perceived lack of jurisdiction regarding uses below the ordinary high water

7

level (OHWL) of Arrowhead Lake. A shoreland protection zone is defined as the area between the OHWL and a line parallel to the OHWL 500 feet from a lake, and a shoreland buffer zone is defined as the area between 500 and 1000 feet from the OHWL. CWLUO, § 46.2. Under the plain meaning of these definitions, the performance standards in section 11.5 apply only to permits for areas above the OHWL. Relators' argument, which addresses the area below the OHWL, does not show that the CUP approved by the commission did not meet the standards in section 11.5.

Relators argue that the CUP approval violates section 11.5.A.1. of the county ordinance because there is no shoreland-vegetation analysis of record. Section 11.5.A.1. requires "[a]nalysis of existing shoreland vegetation according to the Crow Wing Shoreline Rapid Assessment Model and development of a shoreland vegetation restoration plan, if applicable, as set forth in Article 27."

There is currently a home on the shore of Arrowhead Lake. One of the conditions of the CUP is that there can be "[n]o additional clearing along the shoreline of Arrowhead Lake other than what is already existing." Relators do not explain how this prohibition of clearing along the shoreline is not in accord with the Crow Wing Shoreline Rapid Assessment Model, and they do not cite any provision in Article 27 that requires development of a shoreland-vegetation restoration plan when clearing is prohibited.

2. *Traffic*

Relators argue that the commission did not determine and make findings regarding the impact of the proposed use of County Road 134 on the health, safety, and general welfare of the occupants in the surrounding neighborhood and on County Road 134. But

8

the planning commission found that, with the improvements to County Road 134, the proposed use will have very little impact on the health, safety, and general welfare of the occupants in the surrounding neighborhood. The commission also found:

> The County highway Department plans for County Road 134 addresses traffic issues with the proposed 3 foot shoulders for pedestrian [and] bike traffic where there is none currently and the proposed relocation of the entrance for ingress and egress along with the five conditions listed in the letter from the County Highway Department dated 1-15-14.

The five conditions listed in the January 15, 2014, letter are:

> 1. Eliminating one of the entrances into the proposed parking lot to maintain adequate access spacing.
> 2. Constructing a right turn lane into the primary entrance to the proposed parking lot.
> 3. Lowering the grade of the crest vertical curve on CR 134 south of Trout Lake Drive to substantially improve sight distances.
> 4. Providing three-foot paved shoulders to the entire length of CR 134.
> 5. Installing dynamic signing at the intersection of CR 134 and Trout Lake Drive related to pedestrian movements.

The letter also states:

> Items 1 – 4 listed above are included in our department's 2014 resurfacing plans, which are 90% complete and will be bid in March of 2014. Item 5 above will be provided by the camp with input from my staff, and we are currently working with them on the exact materials to be used.

A CUP condition requires the conference to "[c]ontinue to work with the County Highway Department on the traffic plan for County Road 134 to include but not limited to the right hand turn lane and pedestrian crossing."

9

Relators assert that the commission abdicated its decision-making duties in favor of the highway department and the developer. But the findings and the CUP condition related to County Road 134 demonstrate that the commission considered and addressed the impact that additional traffic will have on the surrounding neighborhood. Because relators have failed to show that granting the CUP was an abuse of discretion because the planned upgrade of County Road 134 does not meet one of the standards set out in the ordinance, traffic concerns are not a basis for reversal of the CUP. *See C.R. Invs., Inc. v. Village of Shoreview*, 304 N.W.2d 320, 325 (Minn. 1981) (indicating that when there was a plan for alleviating parking and traffic concerns, those concerns were not a proper basis for denial of a CUP).

Relators assert that the commission also abdicated its decision-making duties when it added a condition that the conference "[w]ork with Crow Wing Soil and Water or other qualified entity to review and address any stormwater concerns on the portion of Trout Lake Camp lying east of County Road 134" without first having in front of it an analysis of stormwater run-off followed by some form of plan. But once again relators have failed to show that the commission's decision did not meet one of the standards set out in the ordinance. The commission found that "Proposed Impervious [surface] is at 9.6 percent on the 100 acre proposed expansion area and 7.7 percent on the Existing Camp area, where 25 percent is allowed under Article 41 of the Crow Wing County Land Use Ordinance." Relators have merely cited Article 41 of the ordinance, which addresses stormwater management, without explaining how the portion of the camp lying east of County Road 134 violates any provision of the article.

10

*3.    Impact on Neighbors*

Relators argue that the planning commission did not address the impact on neighbors.   But the planning commission found that the buffers between camp improvements and the shoreline and neighboring properties would result in a minimal impact.  Relators refer to "the previously pristine Arrowhead neighborhood" and to the DNR recommendation that Arrowhead Lake be designated as a sensitive shoreland district.  But the county has not adopted the DNR's recommendation and has classified Arrowhead Lake as a recreational-development lake.  CWLUO, § 11.2.C, app. A (2013).  That classification means that "[a]t the time of the original classification, [Arrowhead Lake was] characterized by moderate levels of recreational use and existing development consisting mainly of seasonal and year-round residences and recreationally oriented commercial uses."  *Id.*, § 11.2.A.3 (2013).  The conference's proposal is consistent with Arrowhead Lake's designation, and there is evidence in the record that it is also consistent with existing uses and will have a minimal impact on neighboring properties.

*4.    Adequacy of findings*

Relators argue that the commission's findings are inadequate because they do not refer to "specific sections of ordinances that apply to the project."  Relators do not cite any ordinance that requires these references.  Instead, they cite the introductory paragraph of the commission's findings of fact, which states that "[f]indings shall be made in either recommending approval or denial of a conditional use permit application, and should reference specific sections of ordinances that apply to the project."  This introductory statement simply describes a useful practice to follow when making findings of fact.

11

Section references may help explain the rationale for approving a CUP, but they are not required.

Relators also argue that the commission's findings are inadequate because they are "simplistic yes/no responses to the complex problems of planning." But although the commission's findings of fact include "yes" or "no" responses to specific questions, each "yes" or "no" answer is accompanied by findings of fact. The findings of fact are sparse, but under our deferential standard of review, they are sufficient to demonstrate that there was a reasonable basis for the commission's decision to approve the CUP. The record contains sufficient evidence to show that the conference's proposal meets ordinance criteria and that the commission did not abuse its discretion in approving the CUP amendment. Although relators raised numerous objections to the conference's proposal and the proposed use will change the pristine nature of the property, the record does not show that the proposal violates the county land-use ordinance. Accordingly, we affirm the approval of the conference's proposal. *See C.R. Invs.*, 304 N.W.2d at 325 (reversing denial of CUP application when opinions expressed by project opponents lacked factual support); *see also Northwestern Coll. v. City of Arden Hills*, 281 N.W.2d 865, 869 (Minn. 1979) ("Although neighborhood sentiment may be taken into consideration in any zoning decision, it may not constitute the sole basis for granting or denying a given permit.").

**Affirmed.**

12