*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-0171

Jeffrey Hortian, et al.,
Relators,

vs.

Darren E. Fischer,
Respondent,

Wright County Planning Commission,
Respondent.

**Filed December 7, 2015**
**Affirmed**
**Halbrooks, Judge**

Wright County Planning Commission
File No. PR20140002197

John L. Greer, John F. Mathews, James P.A. Morrighan, Hughes Mathews Greer, P.A., St. Cloud, Minnesota (for relators)

John T. Peterson, Johnson, Larson, Peterson & Halvorson, P.A., Buffalo, Minnesota (for respondent Darren Fischer)

Scott T. Anderson, Rupp Anderson Squires & Waldspurger, P.A., Minneapolis, Minnesota (for respondent Wright County)

        Considered and decided by Hooten, Presiding Judge; Halbrooks, Judge; and

Worke, Judge.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

In this appeal, relators Jeffrey and Michelle Hortian challenge an amended conditional-use permit (CUP) granted to respondent Darren E. Fischer by respondent Wright County Planning Commission. The Hortians argue that the planning commission incorrectly interpreted and applied relevant zoning ordinances and request that we reverse the grant of the amended CUP and remand this case to Wright County Planning Commision with instructions to revoke. Because the planning commission's interpretation was reasonable and its actions were not unreasonable, arbitrary, or capricious, we affirm.

## FACTS

Fischer owns a parcel of land in the Buffalo Township area of Wright County. The property is located on a dead-end road and includes both the main residence and a shed that serves as Fischer's diesel repair shop. The property also houses some farm equipment belonging to extended family.

In April 2006, the planning commission granted a CUP to Fischer to operate his diesel repair business as a home-extended business. The property is zoned General Agricultural (AG), which allows certain home-extended businesses as outlined under Wright County, Minn., Zoning Ordinance (WCZO), § 741 (2015). Fischer's original 2006 CUP was predicated on the operation of his diesel repair shop as a part-time business with operating hours of 7:00 a.m. to 10:00 p.m. and a limit of two pieces of equipment that could be parked outside the shop at any one time.

The Hortians, who live on the adjacent property, complained about the business several times over the years and eventually filed a complaint with local law enforcement in November 2013. The Wright County Sheriff's Department surveilled the property for several days and noted violations concerning the operation of Fischer's repair shop outside the permissible hours granted in the original CUP. Fischer received a summons and appeared before the Wright County District Court in February 2014. The case was continued for dismissal on the condition that Fischer file for an amended CUP with Wright County.

Fischer applied for an amended CUP in June 2014, seeking to modify or clarify the conditions of his existing CUP. Fischer sought to modify the 7:00 a.m. to 10:00 p.m. operating window or to seek clarity as to whether customers could pick up or drop off equipment outside that window. He also asked to expand the interior shed space to accommodate more equipment and to modify the CUP's limitation on the number of vehicles that may be kept outside at any given time.

The first hearing before the planning commission concerning the application for an amended CUP occurred on July 17, 2014. At the time of this hearing, Fischer had a favorable recommendation for the amended CUP from the Buffalo Township board. The planning commission heard testimony from Fischer and his wife concerning the changing nature of the business from part-time to full-time. Fischer estimated that 40% of his

3

business is agricultural and is, therefore, well-situated in an AG district.[1] Relators testified in opposition to the amended CUP, arguing both that Fischer's business was in violation of the existing CUP and injurious to neighboring property owners. The planning commission also heard testimony from two other citizens of Buffalo Township. Fischer's immediate neighbor to the south testified in support of granting the amended CUP. Another Buffalo Township resident who did not live in the immediate vicinity of the business and was not directly affected by it testified in opposition. After taking testimony, the planning commission continued the matter in order to perform a site inspection.

The planning commission performed a site inspection on August 18, 2014, and discussed Fischer's amended CUP application at the following planning commission meeting on August 28, 2014. After discussing the site visit and hearing additional testimony from several Buffalo Township residents, the planning commission continued the matter to the next meeting on September 18, 2014, with direction to the county attorney to draft findings consistent with an approval of an amended CUP. While working on the findings, the county attorney determined that proper notice had not been given, and the matter was again continued until the next meeting on November 13, 2014, so that publication of a notice of public hearing could occur. At the November meeting, the planning commission apologized for the publication oversight and again directed the county attorney to draft findings consistent with an approval of the amended CUP. The

---

[1] Although Fischer estimated it was 40% agricultural at the time of the hearing, he noted that he considers his work 100% agricultural during the spring farming season because of the type of equipment requiring repair.

4

matter was continued once more until the December 11, 2014 meeting when the planning commission unanimously voted in favor of granting the amended CUP with specific conditions. This certiorari appeal follows.

## DECISION

A county planning commission's decision to approve a CUP is quasi-judicial in nature and is reviewable by a writ of certiorari. *Big Lake Ass'n v. St. Louis Cty. Planning Comm'n*, 761 N.W.2d 487, 490 (Minn. 2009). A county is legislatively authorized to carry out planning and zoning activities for the purpose of promoting the health, safety, morals, and general welfare of its community. Minn. Stat. § 394.21, subd. 1 (2014). As a zoning tool, a CUP may be approved by the planning commission "upon a showing by an applicant that standards and criteria stated in the ordinance will be satisfied." Minn. Stat. § 394.301, subd. 1 (2014). Upon review, a CUP approval is held to a more deferential standard of review than a denial. *Schwardt v. County of Watonwan*, 656 N.W.2d 383, 389 n.4 (Minn. 2003).

This court independently reviews a planning commission's approval of a CUP to determine if the decision was unreasonable, arbitrary, or capricious. *Id.* at 386. To show that the planning commission acted unreasonably, the Hortians must establish that it did not meet standards set forth in the zoning ordinance and that the grant of the CUP was an abuse of discretion. *Id.* at 387. In determining whether the planning commission acted unreasonably, we follow a two-step process. *RDNT, LLC v. City of Bloomington*, 861 N.W.2d 71, 75 (Minn. 2015). "First, we must determine whether the reasons given by the [planning commission] were legally sufficient." *Id.* at 75-76. If they are legally

5

sufficient, we must determine whether "the reasons had a factual basis in the record." *Id.* at 76.

## I.

As an initial matter, the Hortians assert that the parking of customers' vehicles outside Fischer's business constitutes a violation of the zoning ordinance. The interpretation of an ordinance is a question of law, which we review de novo. *RDNT*, 861 N.W.2d at 75. The goal in interpreting an ordinance is to ascertain and effectuate the intent of the legislative body. Minn. Stat. § 645.16 (2014). When interpreting an ordinance, we give words and phrases their plain and ordinary meaning. *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 72 (Minn. 2012). Further, an ordinance "shall be construed, if possible, to give effect to all its provisions." Minn. Stat. § 645.16.

We first look to see whether the language is free from ambiguity. *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000). "An [ordinance] is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Id.* (citing *Amaral v. St. Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn. 1999)). "If the language is unambiguous, we must give effect to the unambiguous text because the letter of the law shall not be disregarded under the pretext of pursuing the spirit." *Cannon v. Minneapolis Police Dep't*, 783 N.W.2d 182, 193 (Minn. App. 2010) (quotation omitted).

The Hortians challenge the county's interpretation of WCZO § 741(3). This section mandates that there be "no outside storage of supplies, equipment or maintenance items; all work and work related items shall be kept in an enclosed structure." WCZO

§ 741(3). The Hortians contend that customers' trucks parked outside Fischer's business awaiting repair or pickup are pieces of "equipment" or "work-related items" under the ordinance that must remain inside the shop at all times.

In response to the Hortians' argument, the planning commission stated:

> We interpret section 741(3) to mean that the operation of the business must occur in an enclosed structure and that nothing used in the operation of the business can be stored outside. The operation of the business is a mechanical shop. Items used in the operation of the business generally include[] lifts, tools, air guns, oil and automotive canisters, vehicle parts, and tires. We do not find that fully operational and licensed vehicles parked outside, while they may eventually be worked on inside of the structure, are a part of the ongoing business as contemplated under section 741(3). [Fischer's] business is only centered on one or two vehicles at a time and those vehicles are always inside the structure. Vehicles parked outside are regulated by WCZO section 703 not [s]ection 741.

The planning commission determined that customers' vehicles are more appropriately governed by WCZO § 703 (2015), which prohibits storage of inoperative or unlicensed vehicles as refuse. This led the planning commission to issue a specific condition to the amended CUP that "all vehicles and trailers on the property must have current registration and/or licensure unless otherwise exempt by law."

The planning commission was careful to consider the Hortians' concern about an accumulation of vehicles on the property. But even the Hortians acknowledge that the outdoor storage of vehicles is not the main concern, conceding that a property owner is permitted to store an unrestricted number of personally owned vehicles on his or her property. The Hortians urge this court to adopt an overly narrow reading of "equipment"

and "work-related items"—one that would rigidly limit Fischer's ability to work from home. We decline to do so because the text of the ordinance is unambiguous. "Equipment" is commonly defined as "[s]omething with which a person, organization, or thing is equipped." *The American Heritage Dictionary of the English Language* 602 (5th ed. 2011) (noting that the central meaning shared by "equipment" and all synonyms of the word is "the materials needed for a purpose such as a task or a journey"). Any interpretation that forces Fischer to experience technical violations of the CUP each and every time a customer vehicle exits the shop is simply not reasonable.

We conclude that there is only one reasonable interpretation of WCZO § 741(3)—one that allows customers' vehicles to be parked outside while awaiting repair or pickup. The planning commission diligently took into consideration testimony from all affected parties before concluding that customers' trucks are more appropriately governed by WCZO § 703. We therefore conclude that the planning commission did not err in interpreting "equipment" and "work-related items" under WCZO § 741(3) to mean tools and implements utilized in the operation of a mechanical shop.

**II.**

The Hortians argue that the planning commission erred by granting the amended CUP to Fischer because his business is injurious to neighboring property owners. The zoning ordinance requires that the planning commission consider "the effect of the proposed use upon the health, safety, morals, and general welfare of occupants of surrounding lands." WCZO § 505.1 (2015). Additionally, the planning commission shall make the following findings, where applicable:

8

(1)     That the Conditional Use will not be injurious to the use and enjoyment of other property in the immediate vicinity . . . ;

(2)     That the establishment of the Conditional Use will not impede the normal and orderly development and improvement of surrounding vacant property for uses predominant in the area;

(3)     That adequate utilities, access roads, drainage and other necessary facilities have been or are being provided;

(4)     That adequate measures have been or will be taken to provide sufficient off-street parking and loading space to serve the proposed use;

(5)     The use is not in conflict with the Policies Plan of the County; and

(6)     That adequate measures have been taken or will be taken to prevent or control offensive odor, fumes, dust, noise, and vibration . . . .

*Id.*

The Hortians maintain that Fischer's business is injurious because of the additional wear on the roads, the high sound levels from the use of tools, and the bright lighting installed around the building. Because of the rural nature of the community, there are only two properties on Fischer's road that could be immediately impacted by his shop. The surrounding property is farmland. During the hearings, the planning commission questioned Fischer about the Hortians' concerns and ultimately heard from the Hortians and the other resident on the road before concluding that a site visit was warranted. All of the planning commissioners attended the site visit and found that, contrary to the Hortians' complaints, Fischer's use of mechanical tools was not "obnoxious or injurious." In fact, they did not

> observe anything on the site inspection that would raise concerns with the road or the location of neighboring houses

9

relative to [Fischer's] property. The Planning Commission also observed and heard [Fischer] as he operated some of his tools. The tools were not found to create any sort of injurious situation.

The Hortians also assert that an AG zoning district does not include Fischer's type of business. They maintain that they contributed to the development of the current land-use plan and claim that Fischer's diesel repair shop "flies in the face" of the current plan. They argue that Fischer's business would more appropriately be located in a business or industrial district. But the planning commissioners concluded that Fischer

> is providing an agricultural based service in an agricultural setting. [The] Land Use Plan specifies that we are to promote and support agriculture. While [Fischer's] Home Extended Business may be more industrial/commercial in nature, it is still properly situated in this area because the use primarily serves the agricultural community, by providing mechanical services for farm implements.

This finding was based partly on extensive feedback during the hearings from local residents who spoke to the need for this type of business in an agricultural setting. It also relied on feedback from the township, finding:

> The Township also expressed support for this request because it fits well within the objectives of the land use plan—which is preserving agricultural land. Buffalo Township is primarily agricultural. [Fischer's] customers are members of the agricultural community and the equipment he fixes includes tractors and other items used in the agricultural industry.

After hearing testimony and consulting the Buffalo Township land-use plan, the planning commission determined that Fischer provides an agricultural service. And the planning commission included discussion of this in its formal findings of fact.

The planning commission's determination to grant the amended CUP is not in error. The findings constitute a sufficient legal basis for the decision because they demonstrate that the planning commission considered multiple pieces of factual evidence in determining that the amended CUP is permissible under WCZO § 505.1. This court will not substitute its judgment for that of the planning commission's when its decision was not unreasonable, arbitrary, or capricious.

**Affirmed.**