*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-1183**

Kaylen Stiever, et al.,
Appellants,

vs.

Lake County,
Respondent.

**Filed March 16, 2026**
**Affirmed in part, reversed in part, and remanded**
**Larkin, Judge**

Lake County District Court
File No. 38-CV-24-170

John P. Lesch, Lesch Law Firm, LLC, St. Paul, Minnesota (for appellants)

Kristin C. Nierengarten, Molly M. Fischl, Squires, Waldspurger & Mace P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Larkin, Presiding Judge; Cochran, Judge; and Segal, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**LARKIN**, Judge

Appellant homeowners challenge the district court's dismissal of their negligence and mandamus claims against respondent county for failure to state a claim upon which relief can be granted. We affirm in part, reverse in part, and remand.

## FACTS

Appellants Kaylen Stiever, Jason Stiever, Stephen Brown, and Geoffrey Tolley reside on Stanley Road in Two Harbors.[1] JBL Industries is located across the street from the appellants' residences. The property on which JBL operates is owned by Jack Lax.[2] In March 2020, Lax, on behalf of JBL, applied for and received a conditional use permit (CUP) for the property from respondent Lake County. In August 2021, Lax, on behalf of JBL, applied for an expanded CUP for the property, which would authorize certain commercial use. In September 2021, the county granted the expanded CUP with several conditions.

Also in September 2021, appellants began to document violations of the CUP conditions and to report those violations to the county. Appellants ultimately alleged that JBL's conduct resulted in excessive noise, particulate matter, and visual blight. In July 2023, a representative for the county sent appellants an email stating, "I have enough to prove that there is a problem and violation of the conditions of the permit. I am doing my

---

[1] Because appellants' complaint was dismissed under Minn. R. Civ. P. 12.02(e) for failing to state a claim upon which relief could be granted, we accept all allegations the complaint as true. *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 606 (Minn. 2014).
[2] Neither JBL nor Lax are parties to the underlying lawsuit.

best to work with the Planning Commission and other County leadership to resolve the problem . . . I will be working with our Attorney regarding a notice of revocation."

Appellants' amended complaint alleges that, in August 2023, the county held a hearing and "the record established that [Lax] was persistently and openly violating the terms of the CUP." The amended complaint further alleges that the county "failed to terminate Mr. Lax's CUP, and failed to hold a hearing to consider evidence of the CUP violations."

Appellants sued the county, making three claims: negligence, inverse condemnation, and a request for mandamus relief. The county moved the district court to dismiss for failure to state a claim upon which relief could be granted. The district court granted the county's motion and dismissed appellants' amended complaint in its entirety.

This appeal follows.

**DECISION**

Appellants challenge the district court's dismissal of their negligence and mandamus claims for failure to state claims upon which relief can be granted.[3] A complaint "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for judgment for the relief sought." Minn. R. Civ. P. 8.01. A district court may dismiss a complaint if the plaintiff "fail[s] to state a claim upon which relief can be granted." *See* Minn. R. Civ. P. 12.02(e). "A Rule 12.02(e) motion raises the single

---

[3] Appellants do not challenge the dismissal of their reverse-condemnation claim.

question of whether the complaint states a claim upon which relief can be granted." *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 739 (Minn. 2000).

"A claim is sufficient against a motion to dismiss for failure to state a claim if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded." *Walsh*, 851 N.W.2d at 603. "To state it another way, under this rule a pleading will be dismissed only if it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded." *Id.* at 602 (emphasis omitted) (quotation omitted). It is "immaterial whether or not the plaintiff can prove the facts alleged." *Martens*, 616 N.W.2d at 739.

We review a rule 12 dismissal de novo. *Krueger v. Zeman Constr. Co.*, 781 N.W.2d 858, 861 (Minn. 2010). We "consider only the facts alleged in the complaint, accepting those facts as true and must construe all reasonable inferences in favor of the nonmoving party." *Bahr v. Capella Univ.*, 788 N.W.2d 76, 80 (Minn. 2010) (quotation omitted). But we consider the complaint in its entirety, which includes the facts alleged in the complaint and attachments to the complaint. *See Martens*, 616 N.W.2d at 740 ("[O]ur obligation is to *review the complaint as a whole,* including the documents upon which respondents rely, to determine whether as a matter of law a claim has been stated." (emphasis added)); *see* Minn. R. Civ. P. 10.03 ("A copy of any written instrument which is an exhibit to a pleading is a part of the statement of claim . . . set forth in the pleading.").

## I.

Appellants contend that the district court erred in concluding that they failed to state a claim for negligence. "Negligence is generally defined as the failure to exercise such care as persons of ordinary prudence usually exercise under such circumstances." *Domagala v. Rolland*, 805 N.W.2d 14, 22 (Minn. 2011) (quotation omitted). The elements of a negligence claim are "(1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) that the breach of the duty of care was a proximate cause of the injury." *Id.* "In the absence of a legal duty, the negligence claim fails." *Gilbertson v. Leininger*, 599 N.W.2d 127, 130 (Minn. 1999). "The existence of a duty of care is a threshold question because a defendant cannot breach a nonexistent duty." *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014).

"Minnesota law follows the general common law rule that a person does not owe a duty of care to another . . . if the harm is caused by a third party's conduct." *Id.* at 177-78. And, "[i]t is a basic principle of negligence law that public duties created by statute cannot be the basis of a negligence action . . . ." *Cracraft v. City of St. Louis Park*, 279 N.W.2d 801, 805 (Minn. 1979). Accordingly, "a municipality does not owe any individual a duty of care merely by the fact that it enacts a general ordinance." *Id.* at 806. Instead, "[a] duty of care arises only when there are additional indicia that the municipality has undertaken the responsibility of not only protecting itself, but also undertaken the responsibility of protecting a particular class of persons from the risks associated with" the ordinance. *Id.*

However, a municipality may nevertheless owe a "special" or "assumed" duty to an individual based on third-party conduct in certain circumstances. *Id.* at 806-807. There is

5

no "bright line" rule for determining whether a municipality has assumed a duty to act for the protection of others, but four factors are relevant: (1) whether the municipality had "actual knowledge of [a] dangerous condition," (2) whether the plaintiff reasonably relied on "specific actions or representations which cause[d] the [plaintiff] to forego other alternatives of protecting themselves," (3) whether the ordinance "sets forth mandatory acts clearly for the protection of a particular class of persons rather than the public as a whole," and (4) whether the municipality exercised "due care to avoid increasing the risk of harm." *Id.* These factors are not exhaustive, and not all must be satisfied for a special duty to exist. *Radke v. County of Freeborn*, 694 N.W.2d 788, 794 (Minn. 2005).

Appellants argue that the allegations in their amended complaint establish that the county owed appellants a special duty of care and that the county's "duties are made clear by *Cracraft*." As to the first *Cracraft* factor, appellants argue that the county had actual knowledge because the amended complaint alleged "over 100 CUP violations and over 40 instances where these violations were communicated to" the county. But the factor requires actual knowledge of a "dangerous" condition. *See Cracraft*, 279 N.W.2d at 806. The amended complaint describes the alleged CUP violations as "county-sanctioned nuisance activities . . . involving noise, particulate matter, and visual blight." Appellants do not identify facts that could be introduced, consistent with the complaint, to demonstrate that the alleged nuisances constitute a dangerous condition.

As to the second *Cracraft* factor, appellants argue that the "complaint made clear that they relied upon [the county's] obligation and duty to enforce its own ordinance." But reliance on the municipality to carry out its legal obligations is not sufficient, "[i]nstead,

the reasonable reliance must be based on specific actions or representations which cause the persons to forego other alternatives of protecting themselves." *Id.* at 807. Appellants do not identify facts that could be introduced, consistent with the complaint, to demonstrate that appellants relied on the county's statement to forego other means of protecting themselves.

As to the third *Cracraft* factor, appellants argue that "the ordinance setting forth [the county's] duty in the face of CUP violations is the very basis of the lawsuit." But the factor requires us to consider whether the ordinance "sets forth mandatory acts clearly for the protection of a particular class of persons rather than the public as a whole." *Id.* at 807. Appellants do not identify facts that could be introduced, consistent with the complaint, to demonstrate the existence of such circumstances. And the plain language of the relevant ordinance does not suggest that it is intended to protect a particular class of persons.[4] *Compare id.* at 806-808 (holding that a general ordinance requiring fire code inspections did not satisfy the third factor), *with Radke*, 694 N.W.2d at 796-97 (holding that the third factor was satisfied where "the express public policy set forth in the statute [was] to protect children whose health or welfare may be jeopardized through physical abuse, neglect, or sexual abuse" (quotation omitted)).

As to the fourth *Cracraft* factor, appellants argue that the county's "refusal to act constitutes [its] failure to exercise due care." Again, the fourth factor considers whether

---

[4] The ordinance provides, "Where a conditional use does not continue in conformity with the conditions of the original approval, the permit shall be terminated by the Planning Commission." Lake County, Minn., Comprehensive Plan and Land Use Ordinance, Ordinance #12, Art. 26, § 26.05 (2025).

the county used due care to "avoid *increasing* the risk of harm." *Cracraft*, 279 N.W.2d at 807 (emphasis added). Here, even if JBL's conduct created a dangerous condition, appellants do not identify facts that could be introduced, consistent with the complaint, to demonstrate that the county's failure to act increased the risk of harm caused by that condition.

In sum, appellants do not identify facts that could be introduced, consistent with the complaint, to establish a "special" or "assumed" duty under the *Cracraft* factors.

Appellants also argue that dismissal was inappropriate because if "there is a separate statute or rule (such as [the county's] special ordinance requiring CUP termination where the use is not in conformity with the CUP's conditions) a trial on the merits could find that the County owed an individual duty of care to property owners who are harmed." Appellants rely on *Lorshbough v. Township of Buzzle*, 258 N.W.2d 96 (Minn. 1977). Appellants argue that, in *Lorshbough*, the "Minnesota Pollution Control Agency rules . . . created the individual duty of care; in the case at bar, it is the County's own ordinance which prescribes the rule and the duty."

However, in *Lorshbough*, the supreme court did not hold that the municipality owed a duty to the plaintiff on the basis of the Minnesota Pollution Control Agency rules alone. The supreme court concluded that the municipality "could have owed plaintiffs individually a duty of care where they had actual knowledge of a condition that violated PCA regulations, threatened a risk of serious harm to plaintiffs, and arose from property maintained by the government as a dumping site for the public." *Lorshbough*, 258 N.W.2d at 102. As discussed above, appellants do not allege actual knowledge of a "dangerous"

8

condition. Moreover, the alleged conditions arose on land owned by Lax, and not on county-owned land. Thus, we are not persuaded that dismissal of appellants' negligence claim was inappropriate under *Lorshbough*.

Because appellants do not identify facts that could be introduced, consistent with the pleadings, to demonstrate that the county owed appellants a "special" or "assumed" duty of care, dismissal of appellants' negligence claim was appropriate.

## II.

Appellants contend that the district court erred by concluding that they failed to state a claim for mandamus relief.

"Mandamus is an extraordinary remedy." *Minnesota Voters All. v. County of Ramsey*, 971 N.W.2d 269, 275 (Minn. 2022) (quotation omitted). To obtain a writ of mandamus, the appellants must show that (1) the county failed to perform a duty clearly imposed by the law; (2) as a result of which, the appellants have suffered a public wrong that is specifically injurious to them; and (3) the appellants have no other adequate remedy at law. *Id.* Generally, mandamus is appropriate only to "compel the performance of an official duty where there is no discretion and only one course of action is open." *Id.* (quotations omitted). But it "does not control the particular manner in which a duty is to be performed or dictate how discretion is to be exercised." *Id.* (quotations omitted). "When an official has some discretion in how to perform a duty, then at most mandamus may compel the exercise of that discretion—mandamus may not compel a particular outcome." *Id.*

9

The district court concluded that appellants failed to state a claim upon which relief could be granted because the county ordinance "does not impose a mandatory duty to revoke a CUP absent a prior determination of nonconformity." Appellants assign error to that conclusion.

Appellants' petition for mandamus relies on the following language in a county ordinance, "[w]here a conditional use does not continue in conformity with the conditions of the original approval, the permit shall be terminated by the Planning Commission." Lake County, Minn., Comprehensive Plan and Land Use Ordinance, Ordinance #12, Art. 26, § 26.05 (2025). Appellants' amended complaint alleges that on September 27, 2021, the county approved the current CUP, subject to following conditions:

> (1) No camping on the property, all RVs must be unoccupied.
>
> (2) Aggregate larger than 12" must be stored on the western parcels. Smaller than 12" can continue to be stored on the eastern parcel.
>
> (3) Current vegetation along the ravine must be maintained for noise isolation (no tree removal) along the SW border of Parcel 25-5211-10080 and along the shared property line of 25-211-10025 and neighboring parcel (25-5211-10080).
>
> (4) No additional storage of boulders.
>
> (5) Hours of Operations 6:00 a.m. – 8:00 p.m. Monday – Saturday; noise generated during the hours of operation must remain within MN Rules Chapter 7030 (6:00-7:00 am considered "Nighttime").
>
> (6) Obtain a consultant to evaluate the storage activities as they relate to the MPCA requirements for industrial stormwater and solid waste storage requirements and follow through with their recommendations.

The complaint alleges dozens of documented violations of those conditions occurring between September 2021—when the conditions were imposed—and August 2023. The amended complaint also alleges that the county was notified of these violations. Specifically, the amended complaint alleges that

> 16. On July 24, 2023, Christine McCarthy, the Environmental Services Director, Planning and Zoning Administrator, and Solid Waste Officer, for Lake County Minnesota sent an email to Plaintiffs stating, "I have enough to prove that there is a problem and violation of the conditions of the permit. I am doing my best to work with the Planning Commission and other County leadership to resolve the problem . . . I will be working with our Attorney regarding a notice of revocation."

As to the county's response, the amended complaint alleges:

> 19. Notwithstanding their notification of violations of the CUP by Mr. Lax, Defendants refused to hold a hearing on the termination of Mr. Lax's CUP.

> 20. On August 28, 2023, the Lake County Planning Commission held a hearing in which the record established that Mr. Lax[] was persistently and openly violating the terms of the CUP. Notwithstanding their notification of violations of the CUP by Mr. Lax, Defendants failed to terminate Mr. Lax's CUP, and failed to hold a hearing to consider evidence of the CUP violations.

> 21. The Lake County Comprehensive Plan and Land Use Ordinance (Ordinance #12, Effective June 23, 2017) states, "Where a conditional use does not continue in conformity with the conditions of the original approval, the permit shall be terminated by the Planning Commission." (§ 26.05).

> 22. The language in the County ordinance which requires termination of the CUP is not discretionary.

11

23. On multiple occasions, Defendants were presented with incontrovertible proof, by their own agents and by residents of Lake County, that Mr. Lax's use of the property did not continue in conformity with the conditions of the original and existing CUP approval. Nonetheless, Defendants still failed to terminate the CUP, or even to hold a hearing to terminate the CUP.

24. But for Defendants' actions or lack of action relating to the CUP application at issue, Mr. Lax's pervasive overuse of his commercial property causing excessive noise and particulate matter would be illegal under Defendants' zoning code, and Plaintiffs would be entitled to immediate relief, with the assistance of Defendants through their application of nondiscretionary remedies, to abate or remediate the discomfort and damages brought on by Mr. Lax's noise and particulate producing behavior.

As to appellants' request for mandamus relief, the amended complaint alleges:

42. Defendants have been put on notice to clear presentation of violations of the CUP and have been presented clear evidence of those violations.

43. Defendants have refused even to hold a hearing to consider those CUP violations.

44. Defendants have provided no valid excuse for nonperformance.

45. Plaintiffs are entitled to a peremptory writ of mandamus requiring Defendants to terminate the CUP in this matter.

We recognize that counties "have wide latitude in making decisions on" CUPs and that "it is the duty of the judiciary to exercise restraint and accord appropriate deference to civil authorities in routine zoning matters." *Big Lake Ass'n v. Saint Louis Cnty. Plan. Comm'n*, 761 N.W.2d 487, 491 (Minn. 2009) (quotations omitted). "We have stressed the limited role of the judiciary in reviewing zoning decisions, stating that the court's authority

12

to interfere in these matters should be sparingly invoked." *Id.* (quotation omitted) (holding that, based on separations of powers principles, the court would not consider an issue not properly raised before the local zoning authority).

Nonetheless, this case comes before us for de novo review of a dismissal for failure to state a claim upon which relief can be granted. We will affirm the dismissal "only if it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded." *Walsh*, 851 N.W.2d at 602 (emphasis omitted) (quotation omitted). It is "immaterial whether or not the plaintiff can prove the facts alleged." *Martens*, 616 N.W.2d at 739. In addition, "the rules of civil procedure reflect a preference that actions be determined on the merits." *Glen Edin of Edinburgh Ass'n v. Hiscox Ins. Co.*, 992 N.W.2d 393, 400 (Minn. 2023) (quotation omitted).

Given the facts alleged in the complaint and our obligations to assume they are true and to draw all reasonable inferences in appellants' favor, we are not certain that no facts could be introduced consistent with the pleading that would support the relief demanded. Perhaps that outcome may be clearer on a more developed record. But at this stage, the standard for dismissal of the mandamus petition is not satisfied.

In conclusion, we affirm the dismissal of appellants' negligence claim, but we reverse and remand the dismissal of appellants' mandamus claim for further proceedings.

We do so without discussing appellants' argument that the county violated their due-process rights by failing to hold a revocation hearing or to revoke the CUP.[5]

**Affirmed in part, reversed in part, and remanded.**

---

[5] The due-process claim is not properly before us because it was not presented to and considered by the district court. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) ("A reviewing court must generally consider only those issues that the record shows were presented and considered by the [district] court in deciding the matter before it.") (quotation omitted)).